Accordingly, defendants are awarded $1,000.00 in attorney's fees against plaintiff.

**Gary L. PATTEN, Plaintiff,**

v.

**Ken BEAUCHAMP, Defendant.**

**Civ. No. A1–84–121.**

United States District Court,
D. North Dakota,
Southwestern Division.

Dec. 13, 1984.

Gary L. Patten, pro se.

Irvin B. Nodland and Thomas A. Dickson, Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

Gary Patten initiated this *pro se* § 1983 action on June 5, 1984. The complaint alleges that Ken Beauchamp, a municipal judge, issued a restraining order against Patten, that Judge Beauchamp was not authorized to do so, that the act constituted an abuse of power and process, and that Judge Beauchamp issued the order "to deny the plaintiff due process of law," "to accommodate an attorney friend and his client," "to be troublesome and malicious [sic] and to deprive the plaintiff the opportunity to pick-up [sic] his children and to return them to their home and to their school." The complaint further alleges that the order is on plaintiff's criminal and civil record and has been used against him.

For relief Patten seeks $10,000 as damages and various forms of declaratory and injunctive relief.[1]

Several motions are pending at this time, including the defendant's motion to dismiss for lack of subject matter jurisdiction and the defendant's motion for summary judgment.

## FACTUAL BACKGROUND

On May 1, 1982, Gary Patten was married to Valery Patten. At that time, the Pattens were living in Bismarck with their two children. Ms. Patten's mother-in-law, Caroline Shaw, was temporarily staying at the Patten home to assist Ms. Patten (who had just been released from the hospital) with the children. According to the application for emergency relief, Patten assaulted his mother-in-law at his home in Bismarck.[2] Ms. Patten, who was present during the assault, left the home with the two Patten children and, after staying at a resource "safe house" for three days, moved in with her mother who lives in Beulah. After moving to Beulah, Ms. Patten received "about 25 harassing phone calls" from Patten. On the night of May 6th, Patten came to the Shaw residence and "banged on both doors."[3]

The next day, Ms. Patten, with the assistance of a social worker, applied for a temporary protection order from Judge Beauchamp. Judge Beauchamp interviewed Ms. Patten at length and then signed the order. The order excluded Patten from the Shaw home and restrained him from threatening, molesting, or injuring Ms. Patten or the children. No visitation rights were granted, and Ms. Patten received temporary custody of the children.

Once the order was signed, it was delivered to Ms. Patten, who took it to the Clerk of the District Court at Stanton. The Clerk certified the order and returned it to Ms. Patten, who took the order to the Mercer County Sheriff's Department for service. Service of the order was completed on Patten later that day. Following service, the sheriff returned the order to Judge Beauchamp's office and retained a copy for himself.

---

**1.** The plaintiff requests 1) a declaratory judgment that the defendant's act, policy and practice violated the plaintiff's right of due process and equal protection; 2) a "declaratory judgment" prohibiting the defendant and his successors in office from issuing such illegal orders against the plaintiff and other citizens of the United States; 3) a "declaratory judgment" requiring the defendant to submit within ninety days of this court's order all copies of the protective order and a list of all persons, courts, etc. that received information of the illegal order; 4) a "declaratory judgment" requiring the defendant to submit within ninety days of this court's order a declaration by the defendant stating by what authority he represented in issuing such order and a declaration to if he received a monetary sum for its issuance; 5) an order from this court that revokes the illegal order; 6) an order from this court that removes the record of the illegal order from all records; 7) $10,000 in damages; 8) an order from this court requiring the defendant to publish in his local newspaper the offense committed by him in the form of a formal apology for his abuse of power and process; 9) an order requiring the defendant to pay for attorneys' fees and costs; and 10) a jury trial "in this malpractice action."

**2.** Patten was subsequently convicted of an assault charge brought by Ms. Shaw.

**3.** The application also alleged that Patten had previously assaulted Ms. Patten several times.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

■ Defendant argues that the statute which confers jurisdiction for civil rights actions, 28 U.S.C. § 1343(a)(3), "does not abrogate the doctrine of judicial immunity" and that "because Judge Beauchamp is immune from civil liability for his judicial acts, this court should refuse to accept subject matter jurisdiction in this instance." Doc. No. 15 at 1–2. Judge Beauchamp is not, however, necessarily immune from civil liability. Because of his position as a judge of limited jurisdiction, it is possible for the defendant to be liable for civil damages if he acted without jurisdiction over the subject matter or if the acts complained of were not judicial acts. Moreover, even judges of general jurisdiction are not immune from prospective collateral relief or a subsequent award of attorneys' fees to a prevailing party. *See Pulliam v. Allen*, —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Because the plaintiff has alleged that Judge Beauchamp acted without authority and has requested prospective collateral relief, the argument that this court should refuse to accept jurisdiction based on the defendant's immunity is without merit.

■ As an alternative position, the defendant argues that even if Judge Beauchamp is not immune from liability, this court lacks subject matter jurisdiction because the plaintiff "has failed to raise a substantial constitutional question." *Id.* at 3. A suit cannot be dismissed on such grounds unless "the cause of action is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), *quoted in Hagans v. Lavine*, 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974) and *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70,

98 S.Ct. 2620, 2628, 57 L.Ed.2d 595 (1978).[4] This is not a case where the judge of limited jurisdiction was clearly within his jurisdictional authority (either by explicit statutory authority or by undisputed evidence that the provisions of the statute were precisely followed). In addition, this case involves the application of a statute that confers jurisdiction on the inferior court only when certain specified conditions occur (i.e., when the judge of general jurisdiction is unavailable, where good cause as defined by the statute is shown, and where the duration of the order is within the statutory maximum). Whether these conditions had been met at the time the protective order was issued entails not only questions of fact, but also an evaluation of the court's judgment.

The complaint alleges a deprivation of constitutional rights. Although the claims may not have sufficient merit for the plaintiff to prevail (which is a question for summary judgment), this court is unable to find under these circumstances that the plaintiff's action is "so patently without merit as to justify ... dismissal for want of jurisdiction." Judge Beauchamp's possible immunity from damages does not make him immune from the suit. The issue of damages against a court of limited jurisdiction depends on whether the court had jurisdiction to act and whether the act was a judicial one. And the issue of immunity does not apply to the portion of the suit which requests prospective collateral relief.

## MOTION FOR SUMMARY JUDGMENT

Defendant argues 1) that summary judgment should be granted as to the claim for civil damages; 2) that the request for injunctive relief should be denied because there is an adequate remedy at law and there is no risk of irreparable harm; and 3) that Patten's request for various forms of

---

**4.** *See also Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974) (test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy"). It is apparent from the *Duke Power* decision that the *Bell* test is preferred over, and perhaps supersedes, the *Oneida* test. *See Duke Power*, 438 U.S. at 70–71, 98 S.Ct. at 2628–2629.

declaratory relief should be denied based on "[p]rinciples of equity, comity, and federation [sic]." The defendant has submitted affidavits in support of this motion.

Rule 56(e) provides that

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The plaintiff, who appears *pro se*, made no effort to comply with Rule 56 or Local Rule 5. But after review of the entire file, including plaintiff's brief in opposition and the supporting materials, I conclude that enough has been presented so that the Court can make a definitive ruling on the motion.

### Civil Damages

■ A judge is immune from liability for damages if 1) the judge had jurisdiction over the subject matter and 2) the acts complained of were judicial acts. *Birch v. Mazander*, 678 F.2d 754, 755 (8th Cir.1982).

■ There are two different tests that are applied in the determination of whether a judge has jurisdiction over the subject matter. Judges of limited jurisdiction are protected "only when they act within their jurisdiction." *McClain v. Brown*, 587 F.2d 389, 390 (8th Cir.1978); *Randall v. Brigham*, 74 U.S. (Wall. 7) 523, 535–36, 19 L.Ed. 285 (1868) (dicta); *Bradley v. Fisher*, 80 U.S. (Wall. 13) 335, 351, 20 L.Ed. 646 (1871) (dicta). *See Stump v. Sparkman*, 435 U.S.

349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). In contrast, the jurisdiction of a judge of general jurisdiction is construed broadly where the issue of immunity is involved. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). In determining whether a court of general jurisdiction is immune from damages, the Court has applied the "clear absence" test:

A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

*Id.* at 356–57, 98 S.Ct. at 1105, *quoting Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872).

■ The defendant argues, without referring to the limited/general jurisdiction distinction, that the "clear absence" test should be applied to him. Doc. No. 14 at 7. It is true that the Supreme Court has occasionally made general statements that could be construed as providing immunity from damages, by application of the "clear absence" test, to all judges acting in a judicial capacity. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 734–35, 100 S.Ct. 1967, 1975–76, 64 L.Ed.2d 641 (1980); *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Such generalizations, however, have been made in cases involving judges of general jurisdiction. And it is apparent that the Supreme Court has not explicitly rejected the general/limited jurisdiction distinction described in *Randall* and *Bradley* (*see Stump*, 435 U.S. at 355–56, 98 S.Ct. at 1104).[5] Given this fact, and given

---

5. On the other hand, several courts have applied the Supreme Court's general statements, holding that all judges, regardless of their status in the judicial hierarchy, are immune from suits for damages where the act is a judicial one and there is not a clear absence of jurisdiction. Given the purpose of the doctrine of judicial immunity, this view has great merit. "[J]udges should be at liberty to exercise their functions with independence and without fear of conse-

quences." *Scott v. Stansfield*, L.R. 3 Ex. 220, 223 (1868) (emphasis deleted), *quoted in Bradley*, 80 U.S. (Wall. 13) at 349 n. ‡, 20 L.Ed. 646.

The United States Supreme Court has had several opportunities to review this issue, and has refused. *See, e.g. Turner v. Raynes*, 611 F.2d 92 (5th Cir.), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 129 (1980); *Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir.1983),

the fact that the Eighth Circuit has recently applied the limited/general jurisdiction distinction (*McLain*, 587 F.2d at 390), I find that the "clear absence" test does not apply to this case.[6] Therefore, I find that Judge Beauchamp, as a judge of limited jurisdiction, is protected by the doctrine of judicial immunity only when he acted within his jurisdiction.

N.D.Cent.Code § 29–01–15(4) provides that municipal judges have jurisdiction to issue protective orders "under the particular circumstances and for the limited duration set forth in Section 14–07.1–08." According to § 14–07.1–08, a municipal judge may issue a protective order 1) when the district court is unavailable; 2) where good cause is shown in an ex parte proceeding, if it is deemed necessary to protect the applicant or others from abuse; and 3) where the order expires seventy-two hours after its issuance.[7] The statute further provides that

> [a]ny order issued under this section and any documentation in support thereof shall be immediately certified to the district court. Such certification to the district court shall have the effect of commencing proceedings under section 14–

07.1–02 and invoking other provisions of this chapter.

N.D.Cent.Code § 14–07.1–08 (1981).

The record demonstrates that the district court was unavailable;[8] the plaintiff has offered no evidence that would put this issue in question.

The record also supports the defendant's view that there was good cause for the issuance of the protective order.[9] The plaintiff does not take issue on this point; he instead alleges that the order was issued to accommodate an attorney friend. First: this assertion is irrelevant because good cause has been shown; additional reasons for issuing the order, even invidious reasons, have no bearing on the issue. And second: the plaintiff has not provided any evidence to support his view that the order was issued to accommodate Larry Quast and his client. The defendant, on the other hand, has submitted materials that show that there was good cause, that the judge issued the order for these reasons, and that the attorney did not attempt in any way to influence the judge in regards to issuing the order.[10]

---

*cert. denied,* —— U.S. ——, 104 S.Ct. 999, 79 L.Ed.2d 232 (1984).

**6.** This case is an excellent example of the need for a more expansive judicial immunity for courts of limited jurisdiction. Although it is possible under one construction of law that the judge acted in excess of his authority, it is clear that he did not act in absence of all jurisdiction. Although it is alleged that the judge acted to accommodate an attorney and his client, it is clear that he had good cause to issue the order and that an additional reason, if any existed, is irrelevant.

Under the present law, a judge of limited jurisdiction who issues a protective order is exposed to burdensome litigation no matter how he decides the issue. On one hand, he may fear a suit from the person to be enjoined and delay issuing the order so as to make sure that the district court is unavailable or that there is no doubt that good cause exists. As a result of the delay, the complainant may be harmed and sue the judge for failure to act in a reasonable manner. On the other hand, if the judge acts reasonably and issues the order after ascertaining that good cause exists, he is subject to suit from the person who is enjoined. He must

then, if he asserts the affirmative defense of immunity, assume the burden of proving that the district court was unavailable, that there was good cause supporting the issuance of the order, that the order lapsed within the statutory period, and, perhaps, that the order was properly certified to the district court. Either way, the judge is faced with a suit that demands extensive evaluation of factual material, even though the primary action is frivolous.

**7.** The protection order may be continued by the district court, or by the issuing court in the event of continuing unavailability of the district court.

**8.** Beauchamp Affidavit at ¶ 3 (Doc. No. 21, Ex. 1); Skalsky Affidavit at ¶ 5 (Doc. No. 14).

**9.** Application for Emergency Protective Relief (Doc. No. 21, Ex. 2); Beauchamp Affidavit at ¶ 4 (Doc. No. 21, Ex. 1); Skalsky Affidavit at ¶ 6 (Doc. No. 14).

**10.** Application for Emergency Protective Relief (Doc. No. 21, Ex. 2); Beauchamp Affidavit at ¶¶ 3–4 (Doc. No. 21, Ex. 1); Quast Affidavit at ¶ 2 (Doc. 21, Ex. 4).

It is also undisputed that the duration of the order was less than the statutory maximum.

■ This court finds that the three prerequisites for issuing the protective order by a municipal judge pursuant to N.D.Cent. Code § 14–07.1–08 were met. Therefore, at the time of issuance, Judge Beauchamp had jurisdiction to issue the order against the plaintiff. The court must now determine if, as the plaintiff alleges, the judge lost jurisdiction for failure to certify the order to the district court.

The certification provision of § 14–07.1–08 does not state who has the responsibility of certifying a protective order to the district court. Judge Beauchamp signed the order and gave it to Valery Patten. Ms. Patten apparently took the order to the Clerk of District Court, who certified the order. Contrary to § 14–07.1–08, no district court action was initiated by the certification, nor is there any indication that the district court was notified that the order had been issued.[11] Apparently the Clerk believed that the order only needed to be certified for authenticity purposes. But § 14–07.1–08 requires that the order be "immediately certified *to the district court.*" In context, it is clear that this provision requires the order to be immediately forwarded to the district court so that a court of general jurisdiction has the opportunity to review the order when the court is again available.

■ The failure to certify the order to the district court does not, however, result in a loss of jurisdiction. Once the prerequisites are met, a municipal judge has jurisdiction to issue the order. The requirement of certification to the district court is an important procedural step, but it is nonetheless *subsequent* to the jurisdictional requirements. According to N.D.Cent. Code § 29–01–15(4), a municipal judge has jurisdiction to issue a protective order "un-

der the *particular circumstances* and for the limited duration set for in Section 14–07.1–08." The particular circumstances—unavailability of the district court, good cause, and proper expiration time—had been met in this case. Jurisdiction was not lost by the failure to certify the order to the district court.

Regardless of who had the responsibility to certify the protective order to the district court, the failure to do so cannot create a cognizable wrong unless 1) it was improper to issue the order (e.g., good cause did not exist) and 2) as a result of a failure to certify the order to the district court, the order was not vacated during the time-period in which it was in force (i.e., the district court would have vacated the order). As stated above, issuing the protective order in this case was proper because there was good cause, the district court was unavailable, and the order lasted no more than 72 hours. In addition, there is no showing by the plaintiff that the district court would have vacated the order if it would have had the opportunity to review the order.

The last issue concerning judicial immunity is whether the act of issuing a protective order is a judicial act. Two factors are employed to determine whether the act was a judicial act: the nature of the act itself (i.e., whether it is a function normally performed by a judge) and the expectations of the parties (i.e., whether they dealt with the judge in his judicial capacity). *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107. The issuance of a protective order is a function normally performed by a judge, and it is clear that Valery Patten dealt with Judge Beauchamp in his judicial capacity. The act of issuing the order was therefore a judicial act.

■ Because Judge Beauchamp had jurisdiction over the subject matter and the act involved was a judicial one, I find that

---

**11.** Some details relating to the order have not been clarified. According to the Clerk's file stamp, the document was "filed." But no file was opened, and the document was not indexed. And yet the original was apparently returned to

Judge Beauchamp. And the plaintiff's copy of the order does not include a certification stamp. As discussed below, these issues, though troubling, do not affect the final disposition of this suit.

the defendant in this case is immune from civil damages in regards to the protective order issued against the plaintiff on May 7, 1982.

### Request for Declaratory and Injunctive Relief

Since the order issued by Judge Beauchamp was proper and based on good cause, the plaintiff's various requests for declaratory and injunctive relief (*see* note 1 *infra*) are without merit.

Based on the entire file, IT IS ORDERED

1) that defendant's motion to dismiss the action for lack of subject matter is DENIED; and

2) that defendant's motion for summary judgment is GRANTED;[12]

LET JUDGMENT OF DISMISSAL ON THE MERITS BE ENTERED ACCORDINGLY.

---

**12.** The other pending motions have been mooted by the resolution of the motion for summary judgment.