**Ted J. LORAN, Plaintiff and Appellant,**

v.

**Harry ISZLER, Defendant and Appellee.**

Civ. No. 10854.

Supreme Court of North Dakota.

Sept. 4, 1985.

---

**4.** Judgment had not been entered against Car- men at the time this appeal was taken.

Rauleigh D. Robinson [argued], Bismarck, for plaintiff and appellant.

Robert Lane [argued], Asst. Atty. Gen., Bismarck, for defendant and appellee.

MESCHKE, Justice.

Ted Loran appeals a district court judgment dismissing his damages action against Harry Iszler, holding that Iszler was entitled to absolute judicial immunity as an administrative hearing officer with the North Dakota State Highway Department. We conclude that Iszler is entitled to immunity and affirm the judgment of dismissal.

Loran was arrested for driving while under the influence. He requested an administrative hearing on the proposed suspension of his driving privileges, pursuant to N.D.C.C. § 39–20–05. After the hearing, the hearing officer, Harry Iszler, rendered a decision adverse to Loran. Loran appealed to the district court.

The section providing for judicial review, N.D.C.C. § 39–20–06, also provides:

"... Within fifteen days after receipt of the notice, the commissioner or the hearing officer who rendered the decision shall file in the office of the clerk of court to which the appeal is taken a certified transcript of the testimony and all other proceedings. It is the record on which appeal shall be determined. No additional evidence may be heard."

The appeal record certified by Iszler contained a particular standard solution analytical report certification and a list of certified operators that had not been entered into evidence at the hearing. The

district court's attention was called to the erroneous record. The district court concluded that there was "absolutely no basis for finding" that Loran was tested in accordance with statutory requirements and reversed the suspension.

Loran then sued Iszler for actual and punitive damages for Iszler's improper certification of the administrative hearing record. Loran's complaint alleged that Iszler "... intentionally, negligently, recklessly, and further in violation of NDCC 12.1–11–02, submitted or invited reliance upon a material writing which he knew to be forged, altered, or otherwise lacking in authenticity ..."[1] and that Iszler "knowingly made a false entry in or a false alteration of a government record; and/or knowingly, without a lawful authority, impaired the verity of a government record in violation of NDCC 12.1–11–05."[2] Iszler raised the defense of judicial immunity, among other defenses.

Both Loran and Iszler agree that if Iszler was acting as a judicial officer at the time he prepared the record, he is entitled to absolute immunity. Loran contends that Iszler's conduct in preparing and certifying the record was purely ministerial, thereby subjecting him to liability for damages. Iszler asserts that preparing the record

was a continuing part of his duties as hearing officer, entitling him to immunity.

The district court found: 1) Iszler "was the authorized agent of the Highway Commissioner" for matters pertaining to the administrative hearing on the suspension of Loran's driving license; 2) it was Iszler's "duty to see that a record was prepared, that exhibits were received, and that evidence was preserved and to ultimately render a decision"; and 3) it was Iszler's responsibility to make sure "the record was forwarded onto the Highway Commissioner for maintenance of the file" and when judicial review of the hearing decision was requested, "to later prepare the record of the administrative hearing and forward it to the Court." The court concluded that Iszler was acting in a judicial capacity when he prepared and forwarded the administrative hearing record and therefore was "entitled to absolute judicial immunity relative to the subject matter of the Complaint."

The law of immunity of public officials from individual liability is still evolving: *See, e.g., Mitchell v. Forsyth,* — U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (providing good analysis of immunity doctrines); *Pulliam v. Allen,* — U.S. ——, 104 S.Ct. 1970, 80

---

**1.** N.D.C.C. § 12.1–11–02 provides in pertinent part:

"*False statements.*—1. A person is guilty of a class A misdemeanor if, in an official proceeding, he makes a false statement, whether or not material, under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, if he does not believe the statement to be true.

"2. A person is guilty of a class A misdemeanor if, in a governmental matter, he:

"a. Makes a false written statement, when the statement is material and he does not believe it to be true;

\*   \*   \*   \*   \*   \*

"c. Submits or invites reliance on any material writing which he knows to be forged, altered, or otherwise lacking in authenticity;

\*   \*   \*   \*   \*   \*

"4. A matter is a 'governmental matter' if it is within the jurisdiction of a government office or agency, or of an office, agency, or other establishment in the legislative or the judicial branch of government."

**2.** N.D.C.C. § 12.1–11–05 provides:

"*Tampering with public records.*—1. A person is guilty of an offense if he:

"a. Knowingly makes a false entry in or false alteration of a government record; or

"b. Knowingly, without lawful authority, destroys, conceals, removes, or otherwise impairs the verity or availability of a government record.

"2. The offense is:

"a. A class C felony if committed by a public servant who has custody of the government record.

"b. A class A misdemeanor if committed by any other person.

"3. In this section 'government record' means:

"a. Any record, document, or thing belonging to, or received or kept by the government for information or record.

"b. Any other record, document, or thing required to be kept by law, pursuant, in fact, to a statute which expressly invokes the sanctions of this section."

L.Ed.2d 565 (1984) (judicial immunity not a bar to award of attorney's fees under 42 U.S.C. § 1988); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (federal executive officials entitled to only qualified immunity except in rare instances where absolute immunity is required for conduct of public business); *Patzner v. Burkett,* 603 F.Supp. 1139 (D.N. D.1985) (qualified immunity defense available to government officials performing discretionary functions).

The *Restatement (Second) of Torts* offers guidance:

"§ 895D. Public Officers

"(1) Except as provided in this Section a public officer is not immune from tort liability.

"(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.

"(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

"(a) he is immune because engaged in the exercise of a discretionary function,

"(b) he is privileged and does not exceed or abuse the privilege, or

"(c) his conduct was not tortious because he was not negligent in the performance of his responsibility." *Restatement (Second) of Torts* § 895D (1979).

As noted in Comment c to § 895D, some states extend immunity to administrative officers when those officials engage in functions that are quasi-judicial or quasi-legislative in nature. While the Restatement states the general rule as one that protects public officers from liability in tort when they exercise discretionary functions, most litigation in this area centers on what is a discretionary function, as distinguished from what is characterized as a "ministerial act." The inherent problem is succinctly stated in Comment d:

"The cases are legion and are in wide disarray, so that it may appear impossible to organize them into any consistent or coherent whole. The expression, discretionary function, is clearly a standard, requiring measured judgment in its application, and its meaning cannot be reduced to a set of specific rules. Instead, its application to particular facts must be determined by a consideration and evaluation of a number of competing factors."

Those relevant factors are summarized in Comment f to § 895D:

"(1) The nature and importance of the function that the officer is performing.

* * * * * *

"(2) The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of a coordinate branch of government.

* * * * * *

"(3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer.

* * * * * *

"(4) The extent to which the ultimate financial responsibility will fall on the officer.

* * * * * *

"(5) The likelihood that harm will result to members of the public if the action is taken.

* * * * * *

"(6) The nature and seriousness of the type of harm that may be produced.

* * * * * *

"(7) The availability to the injured party of other remedies and other forms of relief...."

■ Even with the assistance of such guidelines, the distinction between discretionary and ministerial acts is often one of degree. Under particular circumstances, even a task or function usually considered ministerial (e.g., preparation of ballots, voter registration, highway repair, recording of documents, filing of papers) may actual-

ly involve the exercise of discretion. Thus, there is a need to apply the relevant factors on a case by case basis.

■ North Dakota cases have followed this dichotomy. A register of deeds may be liable for fault in the ministerial action of recording a mortgage; *Rising v. Dickinson,* 18 N.D. 478, 121 N.W. 616 (1909). On the other hand, this Court has held that a state's attorney is acting in a judicial capacity when he files a criminal complaint, not a ministerial capacity, and thus is immune from a damage action. *Kittler v. Kelsch,* 56 N.D. 227, 216 N.W. 898 (1927). In *Gottschalck v. Shepperd,* 65 N.D. 544, 260 N.W. 573 (1935), a college president and members of the board of administration of the college were held to be engaged in a discretionary function in dismissing a professor, so as to be entitled to official immunity from a damage action. And, in South Dakota, social workers' actions in placement and supervision of minors in a foster home were recently held ministerial so that immunity would not preclude a suit based upon those actions; *National Bank of South Dakota v. Leir,* 325 N.W.2d 845 (S.D.1982).

■ In addition to distinguishing between discretionary and ministerial acts, it is also often necessary to determine whether the public official is acting in the general scope of his official authority. When he goes entirely beyond the scope of his authority and does an act that is not permitted at all by his duty, he is not acting in his official capacity and he has no more immunity than a private citizen.

This focal point is highlighted by a recent case from Wisconsin, which involved an action by parents against individuals employed by Milwaukee County for the wrongful performance of an autopsy on their deceased child. The individuals sued claimed they were immune from liability because an autopsy performed by a medical examiner is a quasi-judicial function. While the Wisconsin Supreme Court found that the medical examiner's duties were quasi-judicial, it also determined that the discretion involved was medical and not governmental, and that public policy would not be served by permitting wholesale decisions to perform autopsies. Under the facts presented to it, the Wisconsin Supreme Court held that the officials acted wholly outside their statutory jurisdiction, not merely in excess of their jurisdiction, and the action against them was therefore not barred by immunity. *Scarpaci v. Milwaukee County,* 96 Wis.2d 663, 292 N.W.2d 816 (1980).

North Dakota cases have employed this analysis as well. Long ago this Court held that a district judge acting within his jurisdiction is not subject to a damage action. *Root v. Rose,* 6 N.D. 575, 72 N.W. 1022 (1897). In *State ex rel. Holloway v. First American Bank,* 248 N.W.2d 859, 862 (N.D.1977), this court held that determination of the question of immunity of the State Securities Commissioner and State Banking Commissioner required the taking of evidence as to whether allegedly defamatory statements "were so irrelevant or extraneous or intemperate as to lose any qualified privilege." *Patten v. Beauchamp,* 599 F.Supp. 288 (D.N.D.1984), held that a municipal judge was acting within his authority when he issued a temporary protective order to a spouse even though he did not properly complete the procedure by certifying the order to the district court, and therefore had judicial immunity from a damages action.

A recent Sixth Circuit decision illustrates the need to determine when a judicial officer is acting within or without the scope of official authority. *King v. Love,* 766 F.2d 962 (6th Cir.1985). King reported his driver's license stolen. When Anderson was later arrested for driving while intoxicated, he produced King's stolen license and the ticket was issued in King's name. When Anderson failed to appear in court, an arrest warrant was issued in King's name. King tried to explain the mistake to the city court judge, but the judge continued the case and told King to get an attorney. When King appeared a second time without counsel, the judge held him in contempt and ordered him jailed without bond. King

was incarcerated for three days before an attorney arranged his release. He later filed a complaint against the judge with the appropriate Tennessee tribunal. Before the scheduled hearing, the judge asked a police officer to execute the Anderson arrest warrant, telling the officer that Anderson and King were the same person. Fingerprint analysis revealed that King and Anderson were *not* the same person and King was released.

King sued the judge under 42 U.S.C. § 1983 for unlawful incarceration and was awarded both compensatory and punitive damages. The judge contended on appeal that the suit was barred under the doctrine of absolute judicial immunity.

The appellate court noted that the original DWI charge was a misdemeanor and that the city court, which was a court of limited jurisdiction, did have subject matter jurisdiction. However, city court judges were only authorized to impose fines of no more than ten dollars for contempt of court, so the judge exceeded his authority by incarcerating King. The appellate court determined that the decision to incarcerate King was a judicial act done in excess of jurisdiction rather than in the clear absence of all jurisdiction. The issue to be resolved was whether judges of courts of limited jurisdiction could be sued for judicial acts done merely in excess of jurisdiction. The Sixth Circuit joined the Fifth, Seventh and Ninth Circuits in holding "regardless of the status that a state judge has in the judicial hierarchy, he is entitled to absolute immunity for judicial acts not done in the clear absence of all jurisdiction." *King,* 766 F.2d at 967. Accordingly, the court concluded that King could not sue for damages arising from the incarceration for contempt, but he could sue for damages in connection with the second arrest since the judge's deliberate misleading of the police officer was a non-judicial act.

The leading case on immunity of administrative officers is *Butz v. Economou, supra.* Justice White, writing for the United States Supreme Court, focused on the rationale underlying judicial immunity—that judges have absolute immunity because of the special nature of their responsibilities rather than because of their particular location within the government. Likewise, the immunities protecting witnesses, prosecutors and grand jurors stem from the characteristics inherent in the judicial process. Because losers in one forum often seek another forum to assail participants in the first forum, absolute immunity is essential "to assure that judges, advocates, and witnesses can perform their respective functions without harrassment or intimidation. At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions...." *Butz,* 438 U.S. at 511–12, 98 S.Ct. at 2913–14.

The United States Supreme Court in *Butz* compared the safeguards in the federal administrative hearing process with those available in the judicial process and found many similar characteristics. Administrative agency proceedings are adversarial in nature and are conducted before a trained fact-finder. A party to an administrative proceeding may present his case by oral or documentary evidence. The pleadings, transcript of testimony and exhibits constitute the exclusive record for decision and the parties have the right to know the findings and conclusions on the issues presented on the record. At the Federal level, the Administrative Procedures Act contains additional safeguards designed to insure the independence of hearing examiners. Thus, Justice White concludes that "[t]here can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is 'functionally comparable' to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions." *Butz,* 438 U.S. at 513, 98 S.Ct. at 2914.

The Court concluded that the importance of preserving the independent judgment of hearing examiners outweighed the risk of unauthorized acts by persons presiding at

agency hearings and held that "... persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts. Those who complain of error in such proceedings must seek agency or judicial review." *Butz*, 438 U.S. at 514, 98 S.Ct. at 2915. The Court then noted that participants in agency proceedings have sufficient opportunity to challenge the legality of the proceedings. In fact, the aggrieved party in *Butz*, who sought damages from high-ranking officials in the Department of Agriculture, was able to successfully challenge the administrative order entered against him by means of judicial review.

■■■ Using the reasoning expressed in *Butz, supra,* we conclude that state administrative proceedings are sufficiently comparable to judicial proceedings to warrant the extension of immunity to an administrative hearing officer engaging in a function that is quasi-judicial in nature. While our state Administrative Agencies Practice Act (chapter 28–32, N.D.C.C.) may not yet provide as complete a panoply of safeguards as the Federal Administrative Procedures Act, it is sufficiently similar in safeguards to extend the *Butz* rationale to state administrative hearing officers. The foremost safeguard, of course, is the right to judicial review, including consideration of whether the participant has been afforded a fair hearing. N.D.C.C. § 28–32–19. Therefore, we hold that an administrative hearing officer is immune from suit for damages for his discretionary acts not done in the clear absence of all jurisdiction.

■■■ Accordingly, we observe that Iszler was the designated agent of the Highway Commissioner, charged with conducting the hearing, receiving evidence, making findings, rendering a decision, and certifying and filing the record on review. It is not only a judicial function to receive evidence and admit it to the record, N.D.R. Ev., Rule 104, but it is also a judicial function to settle a record for review on appeal under some circumstances. *See* N.D.R. App.P., Rule 10(f) and (h).

Nothing in the record before us shows how or when the standard solution analytical report certifications and the list of certified operators (the documents Loran is complaining about) were made part of the record, but those documents were on file with the clerk of the district court and were, therefore, public records. Furthermore, § 39–20–07(7) mandates that copies of the documents in question be admitted as prima facie evidence when certified by the clerk of the district court.

■■■ Under these circumstances, we conclude that Iszler, acting as an administrative hearing officer in making and certifying the hearing record, was engaged in a discretionary quasi-judicial function entitled to immunity. Iszler may have erred in including the documents in the record when they were not ·formally offered into evidence at the hearing, but he did not act in the clear absence of all authority.

Loran dramatically pleads that if his action is barred, this Court would effectively make a mockery of the administrative hearing process and condone a complete absence of redress for flagrant abuses. We reject Loran's argument as overblown. The observation of a very recent United States Supreme Court opinion on the rationale underlying the immunity doctrine is a sufficient response:

"... most of the officials who are entitled to absolute immunity from liability for damages are subject to other checks that help to prevent abuses of authority from going unredressed. Legislators are accountable to their constituents, ..., and the judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damage actions to prevent unjust results." *Mitchell v. Forsyth*, —— U.S. ——, —— –– ——, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985).

Loran was not without redress. Indeed, the suspension of Loran's driving privileges was overturned through the judicial review process. The result in Loran's case

is a clear illustration that abuses in the administrative hearing process can be corrected on appeal. Thus, the safeguards of our Administrative Agencies Practice Act do preserve the integrity of administrative hearings.

Accordingly, we affirm the judgment of dismissal on the grounds of immunity.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and LEVINE, JJ., concur.