2003 ND 124

**John Daniel LAWRENCE, Plaintiff and Appellant,**

v.

**Cassie ROBERDEAU, Dennis Larkin, and Lutheran Social Services of North Dakota, Bismarck, Defendants and Appellees.**

**Nos. 20030060, 20030061.**

Supreme Court of North Dakota.

July 18, 2003.

Rehearing Denied Aug. 26, 2003.

William E. McKechnie, McKechnie Law Office, P.C., Minnetonka, MN, for plaintiff and appellant.

Bernard E. Reynolds of Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, MN, for Lutheran Social Services of North Dakota, defendant and appellee.

Douglas A. Bahr, Solicitor General, Office of the Attorney General, Bismarck,

N.D., for Cassie Roberdeau and Dennis Larkin, defendants and appellees.

SANDSTROM, Justice.

[¶ 1] John Lawrence appeals a summary judgment dismissing his malpractice claim against Lutheran Social Services and against Dennis Larkin and Cassie Roberdeau as agents of Lutheran Social Services. We affirm, concluding there is no claim of malpractice against Lutheran Social Services, Larkin, or Roberdeau.

I

[¶ 2] John Lawrence's claim arises out of two prior cases regarding child support and visitation for his minor son. *See Lawrence v. Delkamp*, 2000 ND 214, 620 N.W.2d 151; *Lawrence v. Delkamp*, 1998 ND 178, 584 N.W.2d 515. In the child custody case, the district court ordered Lawrence to "undergo the domestic violence screening assessment offered by Lutheran Social Services of Bismarck, North Dakota, with the assessment to be completed by Dennis Larkin." Larkin is the lead facilitator of the domestic violence treatment program. Larkin was subpoenaed to testify in the district court action regarding his assessment of Lawrence. Larkin testified that Lawrence exhibited signs of abusive behavior and would benefit from a domestic violence treatment program to learn how to recognize such behavior. Larkin also testified that in his opinion, Lawrence's visits with his son should be supervised until Lawrence successfully completed such treatment.

[¶ 3] Roberdeau testified in her capacity as a social worker for the West Central Human Service Center, where she treated Tina Delkamp, the mother of Lawrence's child. Roberdeau also worked part-time at Lutheran Social Services; however, she did not participate in the assessment of Lawrence. Lawrence had, however, participated in Delkamp's counseling with Roberdeau on a few occasions. In an earlier proceeding, the district court ordered Lawrence's visitation with his son be restricted to supervised visits. Lawrence appealed, claiming the district court erred in finding he committed domestic violence. We reversed in *Lawrence v. Delkamp*, 2000 ND 214, 620 N.W.2d 151, concluding that although threats were made by Lawrence to Delkamp, they did not rise to the level of "imminent physical harm" required under the statutory definition of domestic violence.

[¶ 4] Lawrence sued Lutheran Social Services, Roberdeau, and Larkin for malpractice. Lawrence offered expert testimony, in affidavit, by Diana Hall, a mental health therapist at Northwestern Mental Health Center, Inc. In her case-file report, Hall stated that because there was no past history or evidence of criminal abusive behavior, Lawrence should not have been required to complete a batterer's treatment program. She stated his emotional reactions were those of an average person's response to such a stressful situation. Hall stated it was not appropriate to suspend child visitations on the basis of allegations made by Delkamp. She stated Delkamp had behavior disorders, was opposed to visitations, and had not previously indicated or claimed any abuse by Lawrence. Hall stated the social work professionals involved in this case behaved unethically. She stated there was no evidence of physical abuse by Lawrence, but there *was* evidence of parental alienation by Delkamp. She added, "Professionals who work with children in therapy are ethically obligated to work with the best interests and mental/emotional health of the child as primary consideration," rather than advocating for one of the parents. Hall stated it was unprofessional to ignore clear indicators that Delkamp had mental

health issues, to recommend that visitations with Lawrence be suspended, and to continue to engage in professional activities while apparently harboring strong biases.

[¶ 5] In November 2002, Lutheran Social Services, Roberdeau, and Larkin moved for summary judgment of dismissal. On February 25, 2003, the district court ordered a judgment of dismissal with costs. That same day, the district court ordered an amended judgment of dismissal without costs. On March 6, 2003, Lawrence appealed.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 7] We review this appeal under our standard for summary judgment, which is a procedural device allowing for a prompt resolution of a controversy on the merits without a trial if the evidence demonstrates no dispute as to either a genuine issue of material fact or the inferences to be drawn from undisputed facts and if the evidence shows a party is entitled to judgment as a matter of law. N.D.R.Civ.P. 56(c); *Bender v. Aviko,* 2002 ND 13, ¶ 4, 638 N.W.2d 545; *Fetch v. Quam,* 2001 ND 48, ¶ 8, 623 N.W.2d 357. "Even if a factual dispute exists, summary judgment is proper if the law is such that resolution of the factual dispute will not change the result." *Knight v. North Dakota State Industrial School,* 540 N.W.2d 387, 388 (N.D.1995). Whether a trial court properly granted summary judgment is a question of law, which we review de novo on the entire record. *Fetch,* at ¶ 8. The party seeking summary judgment bears the initial burden of showing no genuine dispute regarding a material fact exists. *Id.* at ¶ 9. On appeal, we view the evidence in the light most favorable to the party opposing the motion. *Id.* at ¶ 8. The party resisting the motion, however, may not simply rely on unsupported and conclusory allegations or denials in the pleadings. The party must set forth specific facts, whether by affidavit or by directing the court to relevant evidence in the record illustrating a genuine issue for trial. N.D.R.Civ.P. 56(e).

## III

[¶ 8] Lawrence claims malpractice by Lutheran Social Services, Larkin, and Roberdeau because his patient-social worker relationship was breached when Larkin recommended he seek treatment under a batterer's program even though he had not been found to be a batterer under a professionally accepted definition. Lawrence argues that there was no evidence he was abusive, that Larkin wrongfully asserted he was abusive, and that Larkin and Roberdeau are working in concert and individually to limit or prevent visitation with his minor son. He claims Larkin and Roberdeau recommended the treatment for financial reasons because they were the only counselors in the Bismarck–Mandan area who offered such treatment.

[¶ 9] Under a professional negligence action, the plaintiff must prove the professional failed to possess and exercise the knowledge, skill, and care that would ordinarily be possessed and employed by members of the profession in good standing, under the same circumstances. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 32, at 187 (5th ed.1984). "[T]he elements of a professional negligence action are: 1) existence of duty or standard of care to protect another from injury; 2) failure to discharge that duty; and 3) resulting injury proximately caused by the breach of the duty." *Rawl-*

*ings v. Fruhwirth,* 455 N.W.2d 574, 579 (N.D.1990).

[¶ 10]   This Court has stated that "[i]n a negligence action, whether or not a duty exists is generally an initial question of law for the court." *Id.* at 577.   "However, if the existence of a duty depends upon factual determinations, the facts must be resolved by the trier of fact." *Id.* "Issues which are questions of fact for the jury may become issues of law for the court, however, where the facts are such that reasonable persons could not differ." *Id.*

[¶ 11]   The district court ordered Lawrence to undergo a batterer's assessment.   Larkin was subpoenaed to testify on the basis of the assessment administered under the court order.   Lawrence relied on Larkin's testimony in his malpractice complaint.   Larkin argues that as a witness, he is immune to suit. The Supreme Court in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), recognized witness immunity and held it is governed by prior absolute immunity cases involving immunity for judges, prosecutors, and grand jurors. Justice White, writing for the United States Supreme Court in *Butz v. Economou,* stated the rationale underlying judicial immunity is that judges must have absolute immunity because of the special nature of their responsibilities rather than because of their particular location within the government.   438 U.S. 478, 511, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).   Absolute immunity protecting witnesses, prosecutors, and grand jurors stems from the characteristics inherent in the judicial process. *Loran v. Iszler,* 373 N.W.2d 870, 875 (N.D.1985).   North Dakota recognized witness immunity in *Loran,* and quoting *Butz,* this Court stated:

> Because losers in one forum often seek another forum to assail participants in the first forum, absolute immunity is

essential "to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.   At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions...."

*Loran,* at 875 (quoting *Butz,* at 512, 98 S.Ct. 2894).

[¶ 12]   We conclude no professional malpractice claim can be maintained because Larkin is immune from suit on the basis of his testimony as a witness.

[¶ 13]   Lawrence's negligence claim against Roberdeau is determined by a state employee's liability under N.D.C.C. § 32–12.2–03. "A state employee is not personally liable for money damages for an injury when the injury is proximately caused by the negligence, wrongful act, or omission of the employee acting within the scope of employment."   N.D.C.C. § 32–12.2–03. There is no evidentiary dispute that Roberdeau was acting within the scope of her employment.   Therefore, Roberdeau is not liable.

IV

[¶ 14]   We conclude any malpractice claim Lawrence would have against Larkin is prevented by witness immunity.   We conclude Lawrence does not have a claim of malpractice against Roberdeau because of N.D.C.C. § 32–12.2–03. We affirm the district court's summary dismissal.

[¶ 15] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING and ALLAN L. SCHMALENBERGER, D.J., concur.

[¶ 16] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of KAPSNER, J., disqualified.