2004 ND 79

**Roland C. RIEMERS, Plaintiff and Appellant,**

v.

**Thomas J. O'HALLORAN, Buckhoff & O'Halloran & Associates, LLP, Defendants and Appellees.**

No. 20030280.

Supreme Court of North Dakota.

April 13, 2004.

Rehearing Denied May 5, 2004.

See also 674 N.W.2d 287.

Ronald C. Riemers, pro se, Grand Forks, Submitted on brief.

Michael L. Gjesdahl, Gjesdahl & Associates, Fargo, for defendants and appellees. Submitted on brief.

NEUMANN, Justice.

[¶ 1] Roland C. Riemers appealed an order dismissing his action against Thomas J. O'Halloran and Buckhoff & O'Halloran & Associates, LLP. We conclude the defendants were immune from suit, and we affirm.

[¶ 2] This is an outgrowth of Riemers' "troubled two-year marriage," *Peters–Riemers v. Riemers*, 2003 ND 96, ¶ 2, 663 N.W.2d 657, to Jenese A. Peters–Riemers. *See also Peters–Riemers v. Riemers*, 2004 ND 28, 674 N.W.2d 287 (reversing a contempt order and money judgment); *Peters–Riemers v. Riemers*, 2002 ND 72, 644 N.W.2d 197, *cert. denied*, 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003) (affirming a judgment dissolving the parties' marriage, awarding custody of the parties' child to Jenese A. Peters–Riemers, awarding child support and spousal support, and dividing the parties' marital property); *Peters–Riemers v. Riemers*, 2002 ND 49, 641 N.W.2d 83 (affirming an order granting a request to evict Riemers from the parties' former marital residence); *Flattum–Riemers v. Peters–Riemers*, 2001 ND 121, 630 N.W.2d 71 (affirming a dismissal of Flattum–Riemers' application for domestic violence protection order); *Peters–Riemers v. Riemers*, 2001 ND 62, 624 N.W.2d 83 (affirming a domestic violence protection order restraining Riemers from contact with Jenese A. Peters–Riemers).

[¶ 3] On August 31, 2000, a judicial referee in the divorce action brought by Je-

nese A. Peters–Riemers issued an order providing, in part:

6. The forensic accounting firm of Buckhoff, O'Halloran and Associates is hereby appointed as the Court's forensic accounting expert, pursuant to North Dakota Rule of Evidence, Rule 706. Such firm shall be charged with the following duties:

i. It shall determine as precisely as possible, Roland's gross and net monthly earnings.

ii. It shall determine Roland's gross annual income for tax years, 1995, 1996, 1997, 1998, 1999, and 2000.

iii. It shall specifically identify any and all accounting and financial irregularities and deceptions it perceives in Roland's financial affairs for the past five years.

iv. It is hereby empowered and authorized to obtain all relevant documents and information from any person, business, governmental entity and source, relative to its duties and obligations herein.

v. It shall provide the parties a monthly accounting of Roland's income and expenses.

vi. At the conclusion of its work, it shall provide the Court and the parties a written report of its findings and conclusions.

The accounting firm of Buckhoff & O'Halloran & Associates, LLP, prepared a report and O'Halloran testified in the divorce trial. The judgment entered in that litigation was affirmed in *Peters–Riemers v. Riemers*, 2002 ND 72, 644 N.W.2d 197.

[¶ 4] Riemers sued Thomas J. O'Halloran and Buckhoff, O'Halloran & Associates, LLP (hereinafter collectively referred to as "O'Halloran"), alleging O'Halloran falsely reported income tax violations, his income, and his ability to pay spousal and child support. Riemers alleged O'Halloran's "un-professional, fraudulent, and unethical actions ... result[ed] in grossly inflated child and spousal support" and "in an unjustly large property award to his wife." The trial court determined "the Defendant accounting firm and accountant are entitled to absolute immunity from suit as a witness in the divorce action," granted the defendants' motion to dismiss, and issued an order dismissing Riemers' action on August 1, 2003. Riemers appealed, raising the following issue: "The only issue to be resolved on appeal is do the Defendants have 'absolute witness immunity' from suit no matter how outlandish, immoral or fraudulent their conduct?"

I

[¶ 5] Riemers has asserted a number of constitutional claims. Relying on N.D. Const. art. I, § 1, Riemers contends he "has the 'inalienable right' of 'acquiring, possessing and protecting property.'" Riemers also relies on part of N.D. Const. art. I, § 9 ("All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy"), and N.D. Const. art. I, § 21 ("No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."). Finally, Riemers relies on N.D. Const. art. I, § 20, asserting "everything in Article I is 'excepted out of the general powers of government and shall forever remain inviolate.'"

[¶ 6] A party must do more than submit bare assertions to adequately raise constitutional issues. *Snyder v. North Dakota Workers Compensation Bu-*

reau, 2001 ND 38, ¶ 19, 622 N.W.2d 712. A party asserting a constitutional claim must bring up the heavy artillery or forgo the claim. *Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Compensation Bureau*, 2002 ND 204, ¶ 17, 654 N.W.2d 426, *cert. denied*, 538 U.S. 1057, 123 S.Ct. 2221, 155 L.Ed.2d 1107 (2003). "We have said 'a party waives an issue by not providing supporting argument' and, 'without supportive reasoning or citations to relevant authorities, an argument is without merit.'" *Kautzman v. Kautzman*, 2003 ND 140, ¶ 15, 668 N.W.2d 59 (quoting *Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 27, 643 N.W.2d 29). "We have also said 'a party making a constitutional claim must provide persuasive authority and reasoning.'" *Kautzman*, at ¶ 15 (quoting *New Town Pub. School Dist. No. 1 v. State Bd. of Pub. School Educ.*, 2002 ND 127, ¶ 17, 650 N.W.2d 813).

[¶ 7] Riemers has provided us with nothing more than bare, conclusory assertions of constitutional claims, without any supportive reasoning or citations to relevant authorities. Riemers' constitutional claims are, therefore, without merit.

## II

[¶ 8] Riemers relies on N.D.C.C. §§ 1–01–03(7), 1–01–06, 12.1–06–04(4), 12.1–06.1–01(2)(f)(15), 12.1–06.1–05, 12.1–11–02(1), 32–03–01, and 32–12.1–04(3). As with his constitutional assertions, Riemers has provided no citations to relevant authorities or supportive reasoning. Riemers' statutory arguments are, therefore, without merit.

## III

[¶ 9] Riemers asserted "[o]ther state courts have considered witness immunity and decided that negligent testimony will not be protected," and cited *Lythgoe v. Guinn*, 884 P.2d 1085 (Alaska 1994); *Mattco Forge, Inc. v. Arthur Young & Co.*, 5 Cal.App.4th 392, 6 Cal.Rptr.2d 781 (1992); *Murphy v. A.A. Mathews, a Div. of CRS Group Eng'rs, Inc.*, 841 S.W.2d 671 (Mo. 1992); *Levine v. Wiss & Co.*, 97 N.J. 242, 478 A.2d 397 (1984); *LLMD of Michigan, Inc. v. Jackson–Cross Co.*, 559 Pa. 297, 740 A.2d 186 (1999); and *James v. Brown*, 637 S.W.2d 914 (Tex.1982). *Lythgoe* is contrary to Riemers' contention. The other decisions relied upon by Riemers are distinguishable from the facts in this case. *Levine* involved an expert selected by the parties to an action. *James* involved a statute immunizing non-negligent acts performed under a state's Mental Health Code. *LLMD of Michigan, Inc.; Murphy*; and *Mattco Forge, Inc.*, involved experts hired by the party seeking to impose liability upon them. Thus, Riemers has not demonstrated that those decisions show the district court erred in dismissing his action.

[¶ 10] Riemers asserts "[u]nder international law and treaty, the standard would also be against absolute witness immunity," arguing he was denied an effective remedy, in contravention of "Part 2, Article 2.3(a) International Covenant of Civil and Political Rights, U.N.T.S. No. 14668, vol 999 (1976), p. 17." Riemers has not, however, provided any supportive reasoning or citations to relevant authorities showing that the cited covenant was either violated or applicable, and his argument is, therefore, without merit.

## IV

[¶ 11] "Witnesses are, as a general rule, absolutely immune from suit based on their testimony." 2 J.D. Lee and Barry A. Lindahl, *Modern Tort Law* § 17:7.05 (2002). "It has long been the established rule that a witness, even if he knowingly gives false testimony, is entitled to abso-

lute immunity from civil damages." *Stone v. Glass,* 35 S.W.3d 827, 828 (Ky.Ct.App. 2000).

[¶ 12] In *Lawrence v. Roberdeau,* 2003 ND 124, 665 N.W.2d 719, John Lawrence sued, among others, Dennis Larkin, the lead facilitator of a domestic violence treatment program. *Id.* at ¶ 2. In Lawrence's child custody case, the court ordered Lawrence to undergo domestic violence assessment by Larkin. *Id.* at ¶ 2. Larkin testified "Lawrence exhibited signs of abusive behavior and would benefit from a domestic violence treatment program." *Id.* at ¶ 2. Larkin also testified that "Lawrence's visits with his son should be supervised until Lawrence successfully completed such treatment." *Id.* at ¶ 2. We affirmed a summary judgment dismissing Lawrence's malpractice claim against Larkin, explaining:

> The Supreme Court in *Briscoe v. La-Hue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), recognized witness immunity and held it is governed by prior absolute immunity cases involving immunity for judges, prosecutors, and grand jurors. Justice White, writing for the United States Supreme Court in *Butz v. Economou,* stated the rationale underlying judicial immunity is that judges must have absolute immunity because of the special nature of their responsibilities rather than because of their particular location within the government. 438 U.S. 478, 511, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Absolute immunity protecting witnesses, prosecutors, and grand jurors stems from the characteristics inherent in the judicial process. *Loran v. Iszler,* 373 N.W.2d 870, 875 (N.D.1985). North Dakota recognized witness immunity in *Loran,* and quoting *Butz,* this Court stated:
>
> > Because losers in one forum often seek another forum to assail partici-

pants in the first forum, absolute immunity is essential "to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation. At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions...."

*Loran,* at 875 (quoting *Butz,* at 512, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895).

> We conclude no professional malpractice claim can be maintained because Larkin is immune from suit on the basis of his testimony as a witness.

*Roberdeau,* at ¶¶ 11, 12.

[¶ 13] The judicial process contains safeguards against inaccurate testimony by witnesses immune from suits for damages:

> The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges.... Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the reliability of the information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error.

*Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). "The foremost safeguard, of course, is the right to judicial review." *Loran v. Iszler,* 373 N.W.2d 870, 876 (N.D.1985). *See also Municipal Servs. Corp. v. State,* 483 N.W.2d 560, 563 (N.D.1992) ("Judicial review provides the ultimate due process protection to those aggrieved by agency decisions.").

[¶14] Under *Roberdeau* and *Loran,* the trial court correctly concluded O'Halloran, as a court-appointed expert, enjoyed absolute immunity as a witness and properly dismissed Riemers' action.

V

[¶15] O'Halloran moved for the imposition of sanctions under N.D.R.Civ.P. 11. Riemers requested that we "impose suitable sanctions" on O'Halloran's attorney. We deny O'Halloran's motion and Riemers' petition.

[¶16] Rule 38, N.D.R.App.P., authorizes an award of costs, including reasonable attorney fees, for a frivolous appeal. "An appeal is frivolous under Rule 38, N.D.R.App.P., 'if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which could be seen as evidence of bad faith.'" *Questa Res., Inc. v. Stott,* 2003 ND 51, ¶7, 658 N.W.2d 756 (quoting *Mitchell v. Preusse,* 358 N.W.2d 511, 514 (N.D.1984)). In light of our decisions in *Roberdeau,* 2003 ND 124, 665 N.W.2d 719, and *Loran,* 373 N.W.2d 870, and the conclusory nature of Riemers' unsupported assertions in this appeal, we conclude his "arguments were so factually and legally devoid of merit that he should have been aware of the impossibility of success on appeal." *Questa Res., Inc.,* at ¶8. Riemers' appeal is frivolous.

[¶17] In a December 4, 2003, affidavit in support of his motion for sanctions under N.D.R.Civ.P. 11, O'Halloran averred: "To date, the appeal has cost me $5,210.15. This amount relates to Mr. Gjesdahl's research and drafting of my 'Appellee's Brief.'" The affidavit was supported by billings from O'Halloran's attorney for research, transcript costs, copying, binding, and postage in the amount of $5,210.15. We award costs of $5,210.15 for Riemers' frivolous appeal.

VI

[¶18] We affirm the order dismissing Riemers' action, and, we award O'Halloran reasonable attorney fees under N.D.R.App.P. 38 in the amount of $5,210.15, and costs under N.D.R.App.P. 39.

[¶19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.