2004 ND 192

**Roland C. RIEMERS, Plaintiff and Appellant,**

v.

**GRAND FORKS HERALD, Knight–Ridder, Inc., and Stephen J. Lee, Defendants and Appellees.**

No. 20040069.

Supreme Court of North Dakota.

Oct. 15, 2004.

Roland Riemers (submitted on brief), *pro se*, Grand Forks, N.D., plaintiff and appellant.

Patrick W. Fisher and Troy J. LeFevre (submitted on brief), Fisher & Olson, Ltd., Grand Forks, N.D., for defendants and appellees.

MARING, Justice.

[¶ 1] Roland C. Riemers ("Riemers") appeals the trial court's order granting the defendants' motion for summary

judgment dated January 13, 2004.[1] We affirm.

## I

[¶ 2] Riemers sued Stephen J. Lee ("Lee"), the Grand Forks Herald ("Herald"), and its parent-company, Knight–Ridder, Inc. ("Knight–Ridder"), alleging that Lee, a staff writer and employee of the Herald, wrote an article regarding Riemers in a North Dakota Senate election containing a statement that was "deliberately and maliciously false and libelous." The statement in question reads as follows: "The court said it found that he had beaten his wife and gave false information about his finances." Riemers further alleged that N.D.C.C. § 14–02–05(4) is unconstitutional because it denies him his "inviolate right" to protect his reputation and to seek a remedy.

[¶ 3] Knight–Ridder moved for dismissal claiming it did not have sufficient "contacts" with North Dakota to subject it to the jurisdiction of the State's courts. Lee and the Herald also moved for dismissal asserting that the article is a fair and true report, without malice, of a judicial proceeding and, as such, is a privileged communication not subject to a libel complaint. The trial court granted both motions.

## II

[¶ 4] Whether a trial court properly granted summary judgment is a question of law subject to de novo review. *Minn–Kota Ag. Products, Inc. v. Carlson*, 2004 ND 145, ¶ 5, 684 N.W.2d 60. Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, there are no genuine issues of material fact or conflicting inferences that can reasonably be drawn from undisputed facts or if the only issues to be resolved are questions of law. *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615. Under N.D.R.Civ.P. 56, if the movant meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact. *Zuger*, at ¶ 8.

## III

[¶ 5] Riemers argues the trial court's conclusion that the article written by Lee and published in the Herald enjoyed "qualified privilege" and thus is immune from liability is incorrect. Section 14–02–03, N.D.C.C., in pertinent part, defines civil libel as ". . . a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes the person to be shunned or avoided, or which has a tendency to injure the person in the person's occupation." To be defamatory, a statement must be false; however, there is no liability for defamatory statements that are privileged. *See Fish v. Dockter*, 2003 ND 185, ¶ 10, 671 N.W.2d 819 (citations omitted). "Privilege is based upon the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Id.* (citation omitted).

[¶ 6] Section 14–02–05(4), N.D.C.C., defines a privileged communica-

---

1. Summary judgment of dismissal was entered on January 15, 2004. When a consistent judgment is subsequently entered, we will consider the appeal from the judgment. *Kaiser v. State*, 417 N.W.2d 175, 177 (N.D.1987).

tion as one made "[b]y a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof." It should be noted, however, that a privileged communication, under Section 14–02–05(4), does not enjoy absolute immunity. Rather, the privilege is a qualified privilege to prevent abuse. *See Richmond v. Nodland,* 552 N.W.2d 586, 588 (N.D.1996); *Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 78 (N.D.1991). Whether privilege applies is a question of law. *Richmond,* 552 N.W.2d at 588. A two-step analysis must be undertaken to determine whether the allegedly defamatory statement is subject to a qualified privilege and, if so, whether the privilege was abused. *Id.* at 589. The trial court correctly applied the two-step analysis:

[F]irst, the court must determine whether the attending circumstances of the communication occasion a qualified privilege and if so, the court must then determine whether the privilege was abused. *Soentgen,* 467 N.W.2d at 78.

The statement complained of by Riemers is a statement of what happened in a certain judicial proceeding involving Riemers, specifically his divorce action and subsequent appeal. Lee's statement related to what a court said in its decision and therefore, as a matter of law, falls within an occasion of qualified privilege as a report of a judicial proceeding.

Having resolved that a qualified privilege exists, the court must then determine whether that qualified privilege was abused. "A qualified privilege is abused if statements are made with actual malice, without reasonable grounds for believing them to be true, and on a subject matter irrelevant to the common interest or duty." *Soentgen,* 467 N.W.2d at 79; *Richmond,* 552 N.W.2d at 589. Actual malice is not inferred from the communication itself, but requires proof that the statement was made with malice in fact, ill-will, or wrongful motive. *Id.*

Riemers presented no evidence of malice and relies only upon the fact that Lee made the statement in the article. Since Riemers presented no evidence of malice by way of affidavit or as otherwise allowed, it is presumed no such evidence exists.

As far as Lee having reasonable grounds to believe the statement true, this Court has read the Supreme Court decision in *Jenese A. Peters–Riemers v. Roland C. Riemers,* 2002 ND 72, 644 N.W.2d 197, and finds that the Supreme Court did in fact uphold the trial court's decision stating, in doing so, that the trial court had made specific findings regarding Roland committing domestic violence against his wife, all of which were supported by the evidence and enumerating those specific findings made by the trial court at paragraph 15 of its decision. In addressing the issue of enforcement of the premarital agreement, the Supreme Court at paragraph 19 of its decision listed the specific findings made by the trial court relevant to that issue. Included in that list was the finding by the trial court that "Roland's representations of his income are neither credible nor reliable ... Roland drafted multiple phony returns in 1998, which identified income amounts varying by more than $80,000 ..." The statement made by Lee in the article that the Supreme Court upheld a district court judgment is true and that the court, which this Court understands to refer to the trial court, found that he had beaten his wife and gave false information about his finances is also true and a fair report of what the trial court stated in its decision.

The third part of the definition of when a qualified privilege is abused is that the statement is made on a subject matter irrelevant to the common interest or duty. In this case the article written by Lee was a newspaper publication about two candidates for the State Senate and their backgrounds and qualifications for office. Truthfulness and a history of violence are relevant to a candidate's fitness for office and candidates running for public office is a matter of public concern. Therefore Lee's statement was made on a subject matter relevant to the common interest.

 [¶ 7] Ordinarily, determinations of actual malice and abuse of a qualified privilege are questions of fact for a jury to determine. *Richmond*, 552 N.W.2d at 590; *Soentgen*, 467 N.W.2d at 79. However, where the facts and inferences to be drawn from them are such that reasonable minds could not differ, the factual issues become issues of law. *Richmond*, at 590; *Soentgen*, at 79. Riemers did not present any evidence of actual malice and therefore, reasonable persons could not differ and would draw only one inference as a matter of law. We conclude the alleged defamatory statement in Lee's article enjoyed a qualified privilege which was not abused because Riemers failed to raise a genuine issue of material fact whether the statement was a "fair and true" report of a "judicial proceeding" and was made without malice, with reasonable belief in its truthfulness, and was based on a subject matter relevant to the common interest. Therefore, the trial court did not err in granting summary judgment to Lee and the Herald.

## IV

 [¶ 8] Riemers argues that the trial court decision granting Knight–Ridder's motion to dismiss based on a lack of jurisdiction was in error. It is not necessary for us to reach this issue. Riemers contends that, under the doctrine of respondeat superior, the Florida-based Knight–Ridder corporation, which owns one-hundred percent of the Delaware-based Grand Forks Herald corporation, should be held responsible for any tortious acts allegedly committed by the Herald. We agree that in a master-servant relationship, a master may be held liable for the tortious acts of the servant: "Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of its employees while the employees are acting within the scope of their employment." *American Nat. Fire Ins. Co. v. Hughes*, 2003 ND 43, ¶ 7, 658 N.W.2d 330. However, because we have concluded that Lee and the Herald enjoy a qualified privilege and are immune from liability, Knight–Ridder likewise cannot be liable. The release of a servant, employee or, in this case, sub-corporation from liability releases the master from liability. *See Horejsi v. Anderson*, 353 N.W.2d 316, 320 (N.D.1984). Because Riemers' only claim against Knight–Ridder is based upon respondeat superior and because we have determined that Lee and the Herald are immune from liability, it is unnecessary for us to review the trial court's determination that it lacked jurisdiction over Knight–Ridder.

[¶ 9] For this same reason, it is not necessary to address the issue of whether Riemers' appeal of the summary judgment of dismissal dated December 2, 2003, of Knight–Ridder is untimely.

## V

 [¶ 10] Riemers argues that N.D.C.C. § 14–02–05(4) violates the North Dakota Constitution because it denies him his "inviolate right" both to protect his reputation and to a remedy.

[¶ 11] Whether a statute is unconstitutional is a question of law. *Hoffner v. Johnson*, 2003 ND 79, ¶ 8, 660 N.W.2d 909. "All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution." *Id.* (citation omitted). A party must do more than submit bare assertions to adequately raise constitutional issues. *Snyder v. North Dakota Workers Comp. Bureau*, 2001 ND 38, ¶ 19, 622 N.W.2d 712. This Court has said "a party waives an issue by not providing supporting argument and, without supportive reasoning or citations to relevant authorities, an argument is without merit." *Riemers v. O'Halloran*, 2004 ND 79, ¶ 6, 678 N.W.2d 547 (quoting *Kautzman v. Kautzman*, 2003 ND 140, ¶ 15, 668 N.W.2d 59). A party asserting a constitutional claim such as this must make a strong case supported by both fact and law or "forgo the claim." *Riemers*, at ¶ 6 (citing *Grand Forks Professional Baseball, Inc. v. North Dakota Workers Comp. Bureau*, 2002 ND 204, ¶ 17, 654 N.W.2d 426).

[¶ 12] Riemers' argument fails to provide any supportive reasoning or citations to relevant authorities. Instead, it relies on a mere assertion that N.D.C.C. § 14–02–05 is unconstitutional. Such an argument is without merit and we, therefore, affirm the trial court.

## VI

[¶ 13] Riemers argues that the trial court's failure to allow him to conduct discovery before summary judgment was an abuse of discretion. We disagree.

[¶ 14] A trial court's decision to grant summary judgment prior to discovery will not be overturned unless the trial court abused its discretion. *See Riemers v. Peters–Riemers*, 2004 ND 153, ¶ 32, 684 N.W.2d 619. Rule 56(b), N.D.R.Civ.P., permits a defendant to ". . . move, at any time, with or without supporting affidavits for summary judgment in the party's favor as to all or any part thereof." Riemers, however, failed to resist defendants' Rule 56(b) motion by requesting a continuance to conduct additional discovery under N.D.R.Civ.P. 56(f).

[¶ 15] Rule 56(f), N.D.R.Civ.P., states that if a ". . . party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court *may* refuse the application for judgment or *may* order a continuance to permit . . . discovery . . ." (Emphasis added.) Even had Riemers invoked Rule 56(f), he has failed to present "facts essential to justify" a continuance. We conclude the trial court did not abuse its discretion and Riemers' argument has no merit.

[¶ 16] We have reviewed Riemers' remaining issues and cannot find any merit to them.

## VII

[¶ 17] We affirm the trial court's judgments dismissing Riemers' complaint against Knight–Ridder, Lee and the Herald.

[¶ 18] GERALD W. VANDE WALLE, C.J., and DAVID W. NELSON, D.J., and WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 19] The Honorable DAVID W. NELSON, D.J., sitting in place of SANDSTROM, J., disqualified.