Richard RYKOWSKY, Plaintiff
and Appellant,

v.

DICKINSON PUBLIC SCHOOL DIS-
TRICT # 1, Rex Cook, and Donald Stau-
dinger, Defendants and Appellees.

Civ. No. 930102.

Supreme Court of North Dakota.

Nov. 10, 1993.

John Thomas Wright, Dickinson, for plain-
tiff and appellant.

Pearce & Durick, Bismarck, for defendants and appellees; argued by David E. Reich.

VANDE WALLE, Chief Justice.

Richard Rykowsky appealed from a summary judgment dismissing his complaint against Dickinson Public School District No. 1, Rex Cook, and Donald Staudinger, members of the District's School Board, for wrongful termination, defamation, and emotional distress. We affirm.

Rykowsky was employed by the District in 1971. In 1974, Rykowsky became the District's Supervisor of Transportation. In July 1989, Rykowsky began to manage the District's food service system and the title of his position was changed to "Supervisor for Transportation and Food Service." On May 17, 1990, Rykowsky was informed that his position would be terminated as of June 30, 1990.

In October 1992, Rykowsky sued the District, Cook, and Staudinger, alleging wrongful termination and emotional distress. He also alleged defamation by Cook and Staudinger for statements they made at a school board meeting on January 16, 1990. The defendants filed a motion for a summary judgment dismissal. The trial court granted the motion, concluding:

> "that the plaintiff was an at-will employee whose employment the Dickinson School District had a right to terminate, that the allegedly defamatory statements by defendants Cook and Staudinger were privileged communications under § 14–02–05 N.D.C.C. and that the plaintiff's claims for intentional and negligent infliction of emotional distress were not supported by the applicable law or the facts of record."

■ Section 34–03–01, N.D.C.C., provides: "An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title." Employment without a definite term is presumed to be at will. *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120 (N.D.1986). "However, by contract, the parties can overcome the presumption of at will employment and create in the employee enforceable employment rights." *Bykonen v. United Hospital*, 479 N.W.2d 140, 141 (N.D.1992). If "an employer promulgates a manual of personnel policies, the entire manual will be examined to determine whether it discloses an intent to overcome the presumption in Section 34–03–01, N.D.C.C." *Schmidt v. Ramsey County*, 488 N.W.2d 411, 413 (N.D.App.1992).

■ Rykowsky contends that he was not a "classified" employee, terminable at will. He contends that if he were a classified employee, "he would have been paid based upon time sheets ... and not paid by salary"; that he "would not have had the authority to hire and fire"; that he "was an administrator under the Federal Fair Labor Standards Act"; that he "was constantly referred to as an administrator and was on committees which consisted of administrators"; and that his position was covered by "policy 4118.1 of the School District,[1] which reads in part: 'Notification will be delivered to the staff members being separated at the earliest possible date, but not later than April 15.'"

When the District's school board changed Rykowsky's position title on July 25, 1989, the adopted motion provided that "the position be listed as a classified employee, and that the range of salary for the position be from $11.50 to $14.50 with Richard Rykowsky grandfathered in at $15.97.... This places Mr. Rykowsky's salary for 1989–90 at

---

1. A fair reading of Policy 4118.1 indicates that it applies to teachers or other certified personnel, but not to classified personnel. Rykowsky argued in his brief: "This policy refers to certified personnel but does not exclude non-certified personnel." However, the maxim *expressio unius est exclusio alterius*, "although more frequently applied in the construction of statutes, is also applicable to the construction of contracts." *Park View Manor, Inc. v. Housing Authority*, 300 N.W.2d 218, 225 (N.D.1980). Therefore, the ex-

pression of certified personnel in Policy 4118.1 excludes non-certified personnel. Furthermore, insofar as the policy corresponds to § 15–47–38(5), N.D.C.C., [teacher to be notified of nonrenewal no later than April 15] it applies to certified teachers. *See* Section 15–47–26, N.D.C.C., ["teacher" includes "all teachers, principals, and superintendents ..."]; § 15–36–11, N.D.C.C., ["No person who is not the holder of a valid teacher's certificate may be permitted or employed to teach in any of the public schools"].

$33,220.80." [2] The District's personnel policy states:

> "Support staff or classified personnel are those employees for which no teacher certification is required; however, special training and/or licensing may be required for employment."

It also says that "Classified personnel may include ... supervisors." Rykowsky's position is specifically listed in the salary schedule of the District's Classified Salary and Benefit Package, which provides in Section I(E)(2):

> "Employment of any classified employee may be terminated at the will of the Dickinson Public School District provided that the employee is given an advance notice of two (2) weeks prior to the intended termination date."

The District's "Policy Descriptor Code: DBA" states that "employees whose job description requires that they have a current valid North Dakota teaching certificate, or other special certification as may be required by state or federal agencies, will be considered to be professional employees."

The District's superintendent stated in an affidavit that Rykowsky's position was not a certified position and Rykowsky was not a teacher. The District's business manager stated in an affidavit that Rykowsky was not required to fill out time sheets as a classified employee because of his supervisory responsibilities; that Rykowsky was paid on a classified employee salary schedule; that Rykowsky, like all classified employees, was paid twice monthly, unlike certified employees who are paid monthly; and that Rykowsky received the same employment benefits for sick leave, vacation, and health insurance as other classified employees, whose benefits are different from those of certified employees. The business manager also said that after he learned that his employment was being terminated, Rykowsky submitted a claim for overtime pay, which the District paid; and that certified personnel are exempt from overtime compensation requirements.

Viewing the evidence presented to the trial court in the light most favorable to Rykowsky, we conclude that Rykowsky did not raise a genuine issue as to any material fact about the wrongful termination claim; no reasonable person could conclude that Rykowsky can overcome the presumption of at-will employment. *See Matter of Estate of Stanton*, 472 N.W.2d 741 (N.D.1991). The District, Cook and Staudinger were entitled to judgment on this issue as a matter of law and the trial court did not err in granting summary judgment on the wrongful termination claim.

■ Rykowsky contends that the trial court erred in dismissing his defamation claim, which is briefly stated in the complaint:

> "4. That on January 16, 1990, at a regular meeting of the Board ..., Rex Cook a member of the Board ..., did falsely and maliciously accuse Plaintiff of costing the School District money and of using District buses in an irresponsible manner. Don Staudinger, also a member of the Board ..., did falsely and maliciously accuse Plaintiff of running a sloppy program with no accountability to anyone.

> "5. The statements made by Defendants Cook and Staudinger were made in an abusive manner, in an insulting tone of voice, were demeaning, degrading, and slanderous, and were made in the presence of approximately 100 people, including representatives from the press."

The trial court concluded that the statements were privileged, and not actionable.

■ Section 14–02–05, N.D.C.C., makes some communications privileged:

> "A privileged communication is one made:

> "1. In the proper discharge of an official duty;

> "2. In any legislative or judicial proceeding, or in any other proceeding authorized by law;

> "3. In a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person

---

**2.** Rykowsky took no action to challenge the clas-    sification until the position was terminated.

interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information; and

"4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.

"In the cases provided for in subsections 3 and 4, malice is not inferred from the communication or publication."

There is no liability for defamatory statements that are privileged. *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D.1991). "Privilege is based upon the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Id.* at 78.

■ Subsections 14–02–05(1) and (2), N.D.C.C., provide an absolute privilege for defamatory statements, even if made with malice. *Stafney v. Standard Oil Co.*, 71 N.D. 170, 299 N.W. 582 (1941). School board meetings have been recognized as "official proceedings authorized by law" within the meaning of a statute similar to § 14–02–05, N.D.C.C. *Frisk v. Merrihew*, 42 Cal.App.3d 319, 116 Cal.Rptr. 781, 783 (1974). Defamatory statements made in preparing for an upcoming school board meeting have been held to be absolutely privileged. *Brody v. Montalbano*, 87 Cal.App.3d 725, 151 Cal. Rptr. 206 (1978), *cert. denied*, 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979). Even in the case of an absolute privilege under § 14–02–05(1) or (2), N.D.C.C., however, a communication must be pertinent to be free of liability. *Stafney v. Standard Oil Co., supra.* Here, the allegedly defamatory statements were pertinent to the matters before the school board. They were made in the course of a discussion about the District's transportation program following the submission of a transportation budget for the next school year. As school board members, Cook and Staudinger had a legitimate interest in the District's transportation program, and they had a right to inquire about and comment upon all aspects of the program. We conclude that Cook's and Staudinger's school board meeting statements were absolutely privileged. Thus, the trial court properly granted summary judgment dismissing Rykowsky's defamation claim.

Rykowsky contends that the trial court erred in dismissing his cause of action for negligent or intentional infliction of emotional distress. Rykowsky argued in his brief: "The Motion for Summary Judgment did not include a motion to dismiss the cause of action of intentional or negligent infliction of emotional distress.... Defendants' Motion does not raise the issue of negligent or intentional infliction of mental harm." The defendants responded in their brief on appeal: "Rykowsky's 'claims' for negligent or intentional infliction of emotional distress were not specifically addressed in the defendants summary judgment motion because the complaint does not state a claim for either negligent or intentional infliction of emotional distress." In their view, Rykowsky's complaint alleged emotional distress as an element of damages, but did not allege it as an independent cause of action.

We need not decide if the complaint asserted negligent or intentional infliction of emotional distress as a cause of action independent of those for wrongful termination and defamation. The defendants' motion was not one for partial summary judgment; it sought an order "dismissing the plaintiff's complaint." As the court said in *Kirschstein v. Haynes*, 788 P.2d 941, 954 (Okl.1990): "Very simply, the motions for summary judgment were not couched in partial terms, but requested judgment in their favor as a matter of law based on the absolute privilege." The trial court addressed the matter as having been pleaded in the complaint and ruled that "the plaintiff's claims for intentional and negligent infliction of emotional distress were not supported by the applicable law or the facts of record." Assuming Rykowsky pleaded claims for emotional distress, we conclude that the defendants were entitled to a judgment of dismissal as a matter of law.

■ A privilege from liability for a defamatory statement "is based upon the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Soentgen v. Quain & Ramstad Clinic, P.C., supra,* 467

**352**

N.W.2d at 78. "A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort." *Correllas v. Viveiros,* 410 Mass. 314, 572 N.E.2d 7, 13 (1991). We agree with the Delaware Supreme Court that "the great weight of foreign precedent that an independent action for intentional infliction of emotional distress does not lie where, as here, the gravamen of the complaint sounds in defamation." *Barker v. Huang,* 610 A.2d 1341, 1351 (Del.1992). *See also Fridovich v. Fridovich,* 598 So.2d 65, 70 (Fla.1992) ["the successful invocation of a defamation privilege *will* preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication"]; *Kirschstein v. Haynes, supra,* 788 P.2d at 954 [a "claim for intentional infliction of emotional distress . . . based on the same factual underpinnings as a defamation claim for which the privilege applies, . . . is also barred by the reach of the absolute privilege"]; *Brody v. Montalbano, supra,* 151 Cal.Rptr. at 215 ["California permits no cause of action based upon the defamatory nature of a communication which is itself privileged under the defamation laws"].

If a cause of action for intentional infliction of emotional distress is barred by the successful invocation of a defamation privilege, it is even more logical that a cause of action for negligent infliction of emotional distress is also barred by the successful invocation of a defamation privilege. Rykowsky's claims for negligent or intentional infliction of emotional distress are based upon the statements made by Cook and Staudinger at the January 16, 1990, school board meeting. Those statements were privileged and not subject to Rykowsky's defamation claim. Therefore Rykowsky's claims for emotional distress are also barred by the privilege, and the defendants were entitled to dismissal of the emotional distress claims as a matter of law.

Affirmed.

MESCHKE, SANDSTROM, NEUMANN and LEVINE, JJ., concur.