2003 ND 69

**John WAGNER, Plaintiff and Appellee,**

v.

**Glenda MISKIN, Defendant and Appellant.**

**No. 20020200.**

Supreme Court of North Dakota.

May 6, 2003.

Rehearing Denied June 3, 2003.

John L. Wagner, Grand Forks, ND, pro se.

Glenda Miskin, Crookston, MN, pro se.

VANDE WALLE, Chief Justice.

[¶ 1] Glenda Miskin appealed from a judgment entered on a jury verdict which awarded John Wagner $3,000,000 in damages for libel, slander, and intentional interference with a business relationship. We affirm.

I

[¶ 2] In the fall of 1998, Miskin enrolled in a University of North Dakota ("UND") physics class taught by Professor John Wagner. Wagner and Miskin give very different descriptions of their relationship and the nature of their communications. Wagner asserted, for example, Miskin sent him harassing and sexually explicit email messages and conveyed false statements about him professionally and personally. Miskin contended her oral, written, and electronic communications with Wagner were consensual and reciprocal. Furthermore, she asserted her communications regarding Wagner were privileged.

[¶ 3] In April 1999, the UND Student Relations Committee ("Committee") held a hearing to consider Miskin's possible violations of UND's student code. The Committee found she had violated student policies by stalking and harassing Wagner; disrupting the physics department and other campus offices; and misusing the computer system by using it to stalk and harass. This decision, upheld in UND's appeal process, resulted in Miskin's indefinite suspension from UND beginning with the fall 1999 semester and required her to leave campus housing.

[¶ 4] In June 2000, Wagner filed a complaint against Miskin in district court alleging intentional infliction of emotional distress, libel, slander, and intentional interference with a business relationship. The court granted Wagner's motion for summary judgment, but later vacated the judgment due to concerns Miskin did not receive the summary judgment papers. Wagner amended his complaint in June 2001 to include Miskin's conduct which occurred after the original complaint was filed, particularly her publication of defamatory statements about him on the Internet. The amended complaint sought damages for libel, slander, and intentional interference with a business relationship. The court dismissed Miskin's cross-complaint against UND and multiple UND employees.

[¶ 5] In April 2002, a jury found Miskin had libeled and slandered Wagner and intentionally interfered with his business relationships; he was awarded $3,000,000 in damages. Miskin, who represented herself, moved to set aside the verdict on several grounds and made other post-judgment motions as well. The district court denied her motions, stating the jury found her statements were false and therefore not privileged. The court also concluded the damages awarded were compensatory, in light of the damage to Wagner's reputation.

[¶ 6] Miskin raises multiple issues on appeal, including: (1) The judgment is barred by various privileges; (2) She had an absolute privilege for statements made

at an administrative hearing at UND; (3) Her report to a licensed counselor was confidential and privileged; (4) The court lacked jurisdiction over the Internet publications originating outside the State, "especially when not particularly and exclusively directed toward the State"; (5) The damages awarded were exemplary and not compensatory; and (6) She did not have effective assistance of counsel because she represented herself.

[¶ 7] Wagner, representing himself in this Court, responded by filing a motion to dismiss under N.D.R.Civ.P. 12(b) and a brief in support of his motion. In his brief, he argues the appeal should be dismissed because it is a frivolous pleading under N.D.R.Civ.P. 11 and Miskin failed to file a transcript. Wagner did not file an appellee brief and is relying on his motion to dismiss and the supporting brief.

## II

[¶ 8] We initially consider Wagner's motion to dismiss. He moved to dismiss this appeal under N.D.R.Civ.P. 12(b), which governs civil proceedings in district courts. This Court is governed by the North Dakota Rules of Appellate Procedure. *See* N.D.R.App.P. 1(a). Furthermore, "[w]e have a strong preference for deciding cases on the merits." *First Nat'l Bank v. Candee,* 488 N.W.2d 391, 396 (N.D.1992). We therefore deny Wagner's motion to dismiss and proceed to the merits of the case.

## III

[¶ 9] Our review of the multiple issues Miskin raises on appeal is hindered by the lack of a complete transcript of the district court proceedings. Miskin, as the appellant, has the duty to provide this Court with a transcript. N.D.R.App.P. 10(b). This rule applies equally to self-represented and represented parties.

*Lake Region Credit Union v. Crystal Pure Water,* 502 N.W.2d 524, 526 (N.D.1993). An "appellant assumes the consequences and the risk for the failure to file a complete transcript. If the record on appeal does not allow for a meaningful and intelligent review of alleged error, we will decline review of the issue." *State v. Clark,* 2001 ND 194, ¶ 5, 636 N.W.2d 660 (citations omitted). The "[f]ailure to provide a transcript may prevent a party from being successful on appeal." *Id.* (quoting *Owan v. Kindel,* 347 N.W.2d 577, 579 (N.D. 1984)). This Court will not review alleged errors supported only by Miskin's personal recollections and factual assertions. We consider the issues Miskin raises under these principles.

### A

[¶ 10] Miskin contends she had an absolute privilege for statements made at the UND Committee hearing because it was a quasi-judicial proceeding. She also asserts Wagner cannot receive damages arising out of the hearing.

[¶ 11] An individual is not liable for defamatory statements if the statements are privileged. *Rykowsky v. Dickinson Public School Dist. # 1,* 508 N.W.2d 348, 351 (N.D.1993). "Privilege is based upon the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Id.* (quoting *Soentgen v. Quain & Ramstad Clinic,* 467 N.W.2d 73, 78 (N.D. 1991)). An absolute privilege applies to those situations where the importance of the unrestricted exchange of information is so great even defamatory statements made with actual malice are privileged. *Soentgen,* 467 N.W.2d at 78. A communication is absolutely privileged if made "in the proper discharge of an official duty" or if made "in any legislative or judicial pro-

ceeding or in any other proceeding authorized by law." N.D.C.C. § 14–02–05(1), (2).

[¶ 12] Some courts, explicitly recognizing Miskin's asserted "quasi-judicial privilege," have extended the privilege protecting communications made in judicial proceedings to proceedings deemed "quasi-judicial." *See, e.g., Mock v. Chicago, R.I. & P.R. Co.,* 454 F.2d 131, 133 (8th Cir.1972) (stating "like the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are 'quasi-judicial' in nature."). *See generally* W.E. Shipley, Annotation, *Libel and Slander: Privilege Applicable to Judicial Proceedings as Extending to Administrative Proceedings,* 45 A.L.R.2d 1296 (2003).

[¶ 13] This Court has not heretofore recognized a judicially-crafted "quasi-judicial privilege." However, N.D.C.C. § 14–02–05(2) states communications are privileged if made "in any other proceeding authorized by law." We have held parole board meetings are proceedings "authorized by law" under § 14–02–05(2) and a letter to the chairman of the parole board was an absolute "privileged communication." *Pulkrabek v. Sletten,* 557 N.W.2d 225, 228 (N.D.1996). We have also stated school board meetings have been considered "official proceedings authorized by law" under a statute similar to § 14–02–05. *Rykowsky,* 508 N.W.2d at 351. Although Miskin relies on *Rykowsky,* in which we affirmed the dismissal of a defamation claim for allegedly defamatory statements made at a school board meeting because the statements were absolutely privileged, the defamation action in *Rykowsky* stemmed from statements made at the meeting. *Id.* at 349, 351. In this case, Wagner has not alleged he was defamed at

the hearing. Miskin asserts any damages Wagner claimed arose from the hearing must be dismissed, yet the record does not demonstrate he claimed such damages.

[¶ 14] Furthermore, Miskin's interpretation of privileged communications is overly broad. Absolutely privileged communications under § 14–02–05(1) or (2) still must be pertinent to be free of liability. *Rykowsky,* 508 N.W.2d 348, 351 (N.D.1993). A privileged statement, such as one made in a judicial proceeding, is not privileged for all subsequent publications by virtue of initially being spoken in a privileged proceeding. Miskin seems to assert that once a statement is made in a setting in which it may be privileged, she is free to repeat it at will in other situations. She cites no relevant authority to support her position nor have we found such authority. Even an "absolute" privilege does not permit an individual to categorically republish possibly defamatory statements without consequence. *Cf. World Wrestling Fedn. Entm't, Inc. v. Bozell,* 142 F.Supp.2d 514, 534 (S.D.N.Y.2001) (stating the judicial proceedings privilege protects statements by parties and their attorneys related to litigation but does not extend to protect allegedly defamatory statements made on radio and television programs).

[¶ 15] Finally, if indeed any error was committed, we conclude it was invited error. The record reflects Wagner filed a motion in limine prior to trial, attempting to prevent Miskin from introducing evidence from the hearing. Miskin's response stated she would "oppose excluding everything from that hearing, as, *inter alia,* much is probative of [plaintiff's] disingenuity and can be used to impeach his testimony in this action." The court granted Wagner's motion in limine, stating it would not try matters already determined in the hearing. However, the court

also acknowledged "the evidence will overlap to some extent since some of the allegations of the amended complaint reference matters that were brought up at the administrative hearing. However, the Court intends to limit testimony and evidence to the issues before the Court in this case." The record does not contain a complete transcript of the district court proceedings, but it does contain a transcript of the trial testimony of Miskin's witness, the advisor to the Committee. Miskin told the court her witness "has been directed or was not allowed to speak about the hearing but if you direct him to speak, Your Honor, then he may speak." Although Wagner entered a tape of the hearing as an exhibit, the tape consisted of his own testimony, not Miskin's, and would not affect her asserted privilege.

[¶ 16] Because Miskin invited any possible error relating to the UND hearing, she cannot now complain of the alleged error on appeal. *See, e.g., Brandt v. Milbrath*, 2002 ND 117, ¶ 27, 647 N.W.2d 674 (refusing to remand a case in which the district court may have applied an incorrect standard to a motion for a new trial because the appellant may have invited the possible error); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 269 (8th Cir.1993) (citations omitted) ("It is 'fundamental that where the defendant "opened the door" and "invited error" there can be no reversible error.' ").

## B

[¶ 17] Miskin also asserts the court and North Dakota "have no jurisdiction over the Internet." She has also stated the court lacked "area and subject matter jurisdiction," but she has not specifically argued the court lacked personal jurisdiction. Many courts have examined jurisdictional issues involving the Internet, and the cases focus on how electronic contacts affect the exercise of personal jurisdiction. *See generally* Richard E. Kaye, Annotation, *Internet Web Site Activities of Nonresident Person or Corporation as Conferring Personal Jurisdiction Under Long–Arm Statutes and Due Process Clause*, 81 A.L.R.5th 41 (2003). Some courts apply a "sliding scale" test in Internet cases to determine whether they have personal jurisdiction over a nonresident defendant, examining the active versus passive nature of the website at issue. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (utilizing a "sliding scale" test for jurisdiction which considers a website's level of interactivity and the nature of commercial activities conducted over the Internet).

[¶ 18] Other courts apply the "effects test" derived from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), in which a California resident sued Florida residents, the author and editor of a National Enquirer article, for libel. *See, e.g., Young v. New Haven Advocate*, 315 F.3d 256, 262–63 (4th Cir.2002), *petition for cert. filed* (analogizing *Calder* and stating "application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state"). In *Calder*, the United States Supreme Court held the exercise of jurisdiction was proper because of the foreseeable "effects" in California of the non-resident defendants' activities. *Calder*, at 789, 791 (stating the article concerned the California activities of a California resident and the alleged harm, injury to reputation and career and emotional distress, would occur in California).

[¶ 19] This Court has not previously had occasion to consider an Internet jurisdiction case. The present case, lacking a complete transcript of the district court proceedings, does not provide us with a

sufficient record to undertake such an analysis.

[¶ 20] Nevertheless, the record before us clearly contradicts Miskin's assertion that her Internet communications were "not directed uniquely toward the State of North Dakota." *Cf. Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir.2002) (holding Texas could not exercise jurisdiction over nonresident defendants who posted an article about plaintiff on the Internet because the article did not refer to Texas and was not specifically directed at Texas readers, and defendants did not know plaintiff was a Texas resident); *Rodenburg v. Fargo–Moorhead YMCA,* 2001 ND 139, ¶ 19, 632 N.W.2d 407 (stating North Dakota courts may be justified in exercising personal jurisdiction over nonresidents who intentionally direct their activities towards the State); *Auction Effertz, Ltd. v. Schecher,* 2000 ND 109, ¶¶ 7–8, 611 N.W.2d 173 (recognizing courts have considered a nonresident's initiation of a telephone or electronic business transaction with the forum state sufficient to exercise personal jurisdiction over the nonresident). Printed copies of Miskin's website indicate its Internet address is "www.undnews.com." On the website, the subjects of linked articles relate to UND issues and staff, demonstrating a North Dakota university was the focus of her website. Articles about Wagner, his trial attorney, and the litigation were the primary topics. Contrary to her assertion, we conclude from the record available to us that Miskin did particularly and directly target North Dakota with her website, specifically North Dakota resident John Wagner.

[¶ 21] However, we note this case does not depend solely on Internet communications, either for jurisdictional purposes or defamation liability. Wagner's amended complaint alleged Miskin defamed him through several different mediums, not just over the Internet. Although she is currently a Minnesota resident, the record reflects Miskin was a North Dakota resident, attending a North Dakota university and living in campus housing, when many of the communications and incidents alleged in Wagner's amended complaint occurred. She also used a North Dakota University System email account to send messages to Wagner.

[¶ 22] After considering the record before this Court, the district court did not err in exercising jurisdiction over Miskin.

IV

[¶ 23] Absent a complete transcript of the district court proceedings, we are unable to conduct a meaningful and intelligent review of the other errors alleged by Miskin. We affirm the judgment awarding John Wagner $3,000,000 in damages for libel, slander, and intentional interference with a business relationship.

[¶ 24] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.