# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 176

Robyn Krile,                                                       Plaintiff and Appellant

     v.

Julie Lawyer, In her official and individual
capacity as Assistant Burleigh County
State's Attorney,                                               Defendant and Appellee

### No. 20190367

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Troy J. LeFevre, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by VandeWalle, Justice.

Lynn M. Boughey, Mandan, ND, for plaintiff and appellant.

Randall J. Bakke (argued), and Bradley N. Wiederholt (appeared), Special Assistant State's Attorneys, Bismarck, ND, for defendant and appellee.

**VandeWalle, Justice.**

[¶1]   Robyn Krile appealed from a district court order granting defendant Julie Lawyer's motion to dismiss under N.D.R.Civ.P. 12(b)(6). We affirm in part, reverse in part, and remand.

I

[¶2]   On February 8, 2017, Assistant State's Attorney Julie Lawyer[1] received an anonymous letter concerning a Bismarck police officer's destruction of evidence. The letter prompted Lawyer to review the files of all active, sworn Bismarck police personnel, which included approximately 100 officers at the time. Lawyer asserts her decision to review the officer files was to ensure the state's attorney's office was fulfilling its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). "The *Brady-Giglio* line of cases requires the government to disclose to the defendant exculpatory material and impeachment evidence." *State v. Russell*, 2016 ND 208, ¶ 6, 886 N.W.2d 677.

[¶3]   As part of her investigation, Lawyer reviewed the file of Sergeant Robyn Krile. In Krile's file, Lawyer discovered two letters of reprimand and several performance evaluations, which Lawyer believed raised *Giglio* issues. Lawyer further investigated the incidents for which the letters of reprimand were issued, and concluded Krile had made false statements as a Bismarck police officer.

[¶4]   Lawyer shared her belief that the letters of reprimand and performance evaluations raised *Giglio* concerns with Bismarck Police Chief Dan Donlin. Chief Donlin disagreed and advised Lawyer that he did not see the incidents for which the letters of reprimand were issued as amounting to *Giglio* issues.

---

[1] Lawyer has since been elected as Burleigh County State's Attorney.

Despite Chief Donlin's pleas, Lawyer continued to believe Krile's conduct amounted to a *Giglio* issue.

[¶5] On March 22, 2017, Lawyer sent a letter (the "*Giglio* letter") to Chief Donlin summarizing her investigation into Krile's file and stating her belief that Krile had made false statements as a Bismarck police officer. Lawyer informed Chief Donlin that such information would have to be disclosed to the defense in cases in which Krile was involved pursuant to *Giglio* and, as a result, the Burleigh County State's Attorney's Office would no longer use Krile as a witness in its cases. A prosecutor's decision not to allow a law enforcement officer to testify in criminal trials because the prosecutor would be required to disclose to the defense existing information about the officer's prior misconduct or other grounds to attack the officer's credibility is often referred to as "*Giglio* impairment" of the officer. *Haynes v. Dep't of Public Safety*, 460 P.3d 565, 566 n.3 (Utah Ct. App. 2020) (quoting *Stockdale v. Helper*, No. 3:17-cv-241, 2017 U.S. Dist. LEXIS 90678, 2017 WL 2546349, at *2 n.3 (M.D. Tenn. June 13, 2017)); *see Hogan v. City of Fort Walton Beach*, No. 19-12294, 2020 WL 2843469, at *1 n.1 (11th Cir. June 1, 2020).

[¶6] Because the Burleigh County State's Attorney's Office was no longer willing to use Krile as a witness in its cases, the Bismarck Police Department terminated Krile's employment. Krile filed a complaint with the Department of Labor and Human Rights claiming the Bismarck Police Department discriminated against her based on race and sex. The Department of Labor commenced an investigation into Krile's claims. As part of its investigation, the Department of Labor requested the Bismarck Police Department submit information regarding the termination of Krile's employment. In its response, the Bismarck Police Department submitted two affidavits of Lawyer in which Lawyer explained the circumstances and her reasoning for issuing the *Giglio* letter. After conducting its investigation, the Department of Labor and Human Rights concluded the Bismarck Police Department did not unlawfully discriminate against Krile.

[¶7] In March 2019, Krile filed a complaint in state district court against Lawyer in her official and individual capacity claiming defamation. The

complaint alleged Lawyer defamed Krile by publishing the *Giglio* letter to the Bismarck Police Department, specifically Chief Donlin, and by publishing her affidavits to the Department of Labor and Human Rights in the course of its investigation. The complaint also alleged Lawyer published the *Giglio* letter to the Peace Officer Standards and Training (POST) Board. Finally, the complaint alleged Lawyer published the *Giglio* letter and related information to Krile's prospective employers. Krile did not attach any exhibits to the complaint supporting her allegations.

[¶8] In response to the filed complaint, Lawyer filed a motion to dismiss under N.D.R.Civ.P. 12(b)(6). Lawyer argued her publication of the *Giglio* letter to Chief Donlin was an absolutely privileged communication made within the proper discharge of her official duties as an assistant state's attorney under N.D.C.C. § 14-02-05(1). Lawyer further argued that submission of her affidavits to the Department of Labor and Human Rights during the course of its investigation was an absolutely privileged communication under N.D.C.C. § 14-02-05(2). Lawyer did not admit that she published the *Giglio* letter to the POST Board, but argued that if she had published the letter to the Board, it also would have been an absolutely privileged communication under N.D.C.C. § 14-02-05(2). Lawyer attached sixteen exhibits to her motion including submissions and communications made during the course of the Department of Labor's investigation, the *Giglio* letter, and Lawyer's affidavits.

[¶9] Krile responded to Lawyer's motion arguing that publication of the *Giglio* letter and Lawyer's affidavits were not absolutely privileged communications. Attached as an exhibit to her response, Krile submitted an email conversation between Lawyer and Lincoln Police Chief Joe Gibbs. The email conversation revealed Chief Gibbs had contacted Lawyer regarding potentially hiring Krile after Krile's employment with the Bismarck Police Department had been terminated. In response, Lawyer disclosed the *Giglio* letter to Chief Gibbs.

[¶10] After a hearing was held, the district court granted Lawyer's motion to dismiss. Relying solely on the *Giglio* letter and Lawyer's affidavits submitted to the Department of Labor and Human rights, the district court determined

Lawyer's publication of the *Giglio* letter and her affidavits were absolutely privileged communications because Lawyer was acting in her official capacity as a prosecutor when she disclosed the alleged defamatory materials. The district court did not explicitly address Lawyer's disclosure of the *Giglio* letter to Lincoln Police Chief Gibbs.

[¶11] On appeal, Krile argues the district court erred in dismissing her complaint because Lawyer's disclosure of the alleged defamatory material to Chief Donlin, the Department of Labor and Human Rights, the POST Board, and to Lincoln Police Chief Gibbs were not absolutely privileged communications under N.D.C.C. § 14-02-05. Krile further argues the district court erred in dismissing her complaint because there are disputed material facts and the district court relied on materials outside the pleadings in dismissing her complaint. Krile contends that because the district court relied on materials outside the pleadings in dismissing her complaint, the court should have converted Lawyer's Rule 12 motion into a motion for summary judgment and allowed the parties to submit additional evidence.

II

[¶12] We first address Krile's argument that the district court considered matters outside the pleadings and, therefore, should have treated Lawyer's motion to dismiss as a motion for summary judgment and allowed the parties to submit additional evidence.

[¶13] Rule 12(d), N.D.R.Civ.P., states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In deciding a motion under Rule 12(b)(6) or 12(c), district courts "may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record, without converting the motion to a summary judgment under Rule 56." *Nelson v. McAlester Fuel Co.*, 2017 ND

4

49, ¶ 22, 891 N.W.2d 126 (quoting *Riemers v. State*, 2007 ND APP 4, ¶ 8, 739 N.W.2d 248). We have recognized the rationale for this rule:

> When a plaintiff chooses not to attach to the complaint, or incorporate by reference, a document upon which the plaintiff relies, and the document is integral to the complaint, the defendant may produce the document in support of a motion to dismiss on the pleadings. *Jakobe v. Rawlings Sporting Goods Co.*, 943 F. Supp. 1143, 1149 (E.D. Mo. 1996); *Brogren v. Pohlad*, 933 F. Supp. 793, 798 (D. Minn. 1995). In deciding a Rule 12 motion, the court can consider a document upon which the complaint is based, without treating the motion as a Rule 56 motion, because a plaintiff "ought not be permitted to defeat a motion to dismiss through the artifice of not attaching the critical document to the complaint." *Brogren*, 933 F. Supp. at 798.

*Id.*

[¶14] Lawyer attached sixteen exhibits to her motion to dismiss including her affidavits submitted to the Department of Labor and Human Rights and the *Giglio* letter provided to Bismarck Police Chief Donlin. The only exhibits the district court considered in granting Lawyer's motion were the *Giglio* letter and Lawyer's affidavits to the Department of Labor. Krile's claims relied on these exhibits. The *Giglio* letter and Lawyer's affidavits were "embraced by the pleadings," and Krile cannot defeat Lawyer's motion to dismiss by neglecting to attach to the complaint the documents upon which she relies in support of her claims. Under Rule 12(d), the district court did not consider "matters outside the pleadings" and did not err by declining to convert Lawyer's Rule 12(b)(6) motion to dismiss into a motion for summary judgment.

III

[¶15] Krile contends the district court erred in granting Lawyer's Rule 12(b)(6), N.D.R.Civ.P., motion to dismiss Krile's defamation claims. "A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)[6] tests the legal sufficiency of the claim presented in the complaint." *In re Estate of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521 (quoting *Brandvold v. Lewis & Clark Pub. Sch. Dist. No. 161*, 2011 ND 185, ¶ 6, 803 N.W.2d 827). "On appeal from a dismissal under

N.D.R.Civ.P. 12(b)[6], we construe the complaint in the light most favorable to the plaintiff and accept as true the well-pleaded allegations in the complaint." *Id.* A district court's decision granting a Rule 12(b)(6) motion to dismiss a complaint will be affirmed "if we cannot 'discern a potential for proof to support it.'" *Nelson v. McAlester Fuel Co.*, 2017 ND 49, ¶ 20, 891 N.W.2d 126 (quoting *Kouba v. State*, 2004 ND 186, ¶¶ 4-6, 687 N.W.2d 466). We review a district court's decision granting a motion to dismiss under N.D.R.Civ.P. 12(b)(6) de novo on appeal. *Estate of Nelson*, at ¶ 5.

[¶16] Krile claimed Lawyer defamed her by writing and publishing the *Giglio* letter to Bismarck Police Chief Donlin. Krile also claimed Lawyer defamed her by publishing the *Giglio* letter and her affidavits to the Department of Labor and Human Rights and the POST Board.

[¶17] Defamation includes either libel or slander. N.D.C.C. § 14-02-02. "Libel is a false and unprivileged publication by writing . . . which has a tendency to injure the person in the person's occupation." N.D.C.C. § 14-02-03.

> Slander is a false and unprivileged publication other than libel, which:
>
> . . . .
>
> 3. Tends directly to injure the person in respect to the person's office, profession, trade, or business, either by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profits;
>
> . . . .
>
> 5. By natural consequence causes actual damage.

N.D.C.C. § 14-02-04.

[¶18] Under N.D.C.C. § 14-02-05, certain communications are privileged:

> A privileged communication is one made:
> 1. In the proper discharge of an official duty;
> 2. In any legislative or judicial proceeding or in any other proceeding authorized by law;

6

3.  In a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information; and

4.  By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.

In the cases provided for in subsections 3 and 4, malice is not inferred from the communication or publication.

"Privilege is based upon the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Richmond v. Nodland*, 552 N.W.2d 586, 588 (N.D. 1996) (quoting *Rykowsky v. Dickinson Pub. Sch. Dist. 1*, 508 N.W.2d 348, 351 (N.D. 1993)). "There is no liability for defamatory statements that are privileged." *Id.* (citing *Rykowsky*, 508 N.W.2d 348; *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D. 1991)).

[¶19] Privileged communications may be either absolute or qualified. *Id.* "A privilege is absolute when the free exchange of information is so important that even evidence of actual malice does not destroy the privilege." *Id.* (citing N.D.C.C. §§ 14-02-05(1)-(2); *Soentgen*, 467 N.W.2d at 78; *Emo v. Milbank Mut. Ins. Co.*, 183 N.W.2d 508 (N.D. 1971); *Farmers Educ. & Coop. Union v. WDAY, Inc.*, 89 N.W.2d 102 (N.D. 1958)). "A qualified privilege, on the other hand, 'may be abused and does not provide absolute immunity from liability for defamation.'" *Id.* (quoting *Soentgen*, at 78; and then citing N.D.C.C. § 14-02-05(3), (4)). "Whether privilege applies is a question of law for the courts." *Id.* (citing *Soentgen*, at 78).

A

[¶20] Lawyer argues her statements were privileged under N.D.C.C. § 14-02-05(1) and (2). "Subsections 14-02-05(1) and (2), N.D.C.C., provide an absolute privilege for defamatory statements, even if made with malice." *Rykowsky*, 508 N.W.2d at 351 (citing *Stafney v. Standard Oil Co.*, 71 N.D. 170, 299 N.W. 582

(1941)). "Even in the case of an absolute privilege under § 14-02-05(1) or (2), N.D.C.C., however, a communication must be pertinent to be free of liability." *Id.*

[¶21] The district court dismissed Krile's claims after determining Lawyer's issuance and publication of the *Giglio* letter were part of her official duties as a prosecutor and absolutely privileged under N.D.C.C. § 14-02-05. Lawyer's publication of the *Giglio* letter to Chief Donlin and publication of the *Giglio* letter and her affidavits to the Department of Labor and POST board raises issues under N.D.C.C. § 14-02-05(1) and (2).

1

[¶22] Under N.D.C.C. § 14-02-05(1), certain communications are absolutely privileged when made "[i]n the proper discharge of an official duty." Section 11-16-01, N.D.C.C., provides the official duties of the state's attorney:

> The state's attorney is the public prosecutor, and shall:
> 1. Attend the district court and conduct on behalf of the state all prosecutions for public offenses.
> 2. Institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses when the state's attorney has information that such offenses have been committed, and for that purpose, when the state's attorney is not engaged in criminal proceedings in the district court, the state's attorney shall attend upon the magistrates in cases of arrests when required by them except in cases of assault and battery and petit larceny.
> 3. Attend before, and give advice to, the grand jury whenever cases are presented to it for consideration.
> 4. Draw all indictments and informations.
> 5. Defend all suits brought against the state or against the county.
> 6. Prosecute all bonds forfeited in the courts of record of the county and prosecute all actions for the recovery of debts, fines, penalties, and forfeitures accruing to the state or to the county.

7. Deliver duplicate receipts for money or property received in the state's attorney's official capacity and file copies thereof with the county auditor.

8. On the first Monday of January, April, July, and October in each year, file with the county auditor an account, verified by the state's attorney's oath, of all money received by the state's attorney in an official capacity in the preceding three months, and at the same time, pay it over to the county treasurer.

9. Give, when required and without fee, the state's attorney's opinion in writing to the county, district, township, and school district officers on matters relating to the duties of their respective offices.

10. Keep a register of all official business in which must be entered a note of each action, whether civil or criminal, prosecuted officially, and of the proceedings therein.

11. Act as legal adviser of the board of county commissioners, attend the meetings thereof when required, and oppose all claims and actions presented against the county which are unjust or illegal.

12. Institute an action in the name of the county to recover any money paid upon the order of the board of county commissioners without authority of law as salary, fee, or for any other purpose, or any money paid on a warrant drawn by any officer to that officer's own order or in favor of any other person without authorization by the board of county commissioners or by law.

13. Institute an action in the name of the county to restrain the payment of any money described in any order or warrant of the kind described in subsection 13 when the state's attorney secures knowledge of such order or warrant before the money is paid thereon.

14. Assist the district court in behalf of the recipient of payments for child support or spousal support combined with child support in all proceedings instituted to enforce compliance with a decree or order of the court requiring such payments.

15. Institute proceedings under chapter 25-03.1 if there is probable cause to believe that the subject of a petition for involuntary commitment is a person requiring treatment.

16. Institute and defend proceedings under sections 14-09-12 and 14-09-19 and chapters 14-15, 27-20, and 50-01 upon consultation with the human service zone director or the executive director of the department of human services.

17. Act as the legal advisor and represent a human service zone as set forth in a plan approved under section 50-01.1-03. The state's attorney within the human service zone, by way of agreement, shall designate a singular state's attorney's office, within or outside the human service zone, to act as legal advisor of the human service zone. The host county state's attorney shall serve as the legal advisor if no agreement is reached. The agreement may not limit a state's attorney's individual discretion in court filings and representation.

18. Act as the legal advisor and represent the human service zone regarding employer actions, including grievances and appeals, taken against the human service zone team member. The state's attorney of the county by which the human service zone team member is employed shall act as the legal advisor of the human service zone, unless a different agreement is established by the affected state's attorney.

The state's attorney shall not require any order of the board of county commissioners to institute an action under subsection 12 or 13.[2]

Assistant state's attorneys have the same powers and perform the same duties as the state's attorney. N.D.C.C. § 11-16-02.[3] Any communication made by a state's attorney while performing an official duty as prescribed in N.D.C.C. § 11-16-01 is entitled to absolute privilege.

---

[2] Section 11-16-01, N.D.C.C., was amended effective January 1, 2020. The amendments are irrelevant to this case and have no impact on the outcome of our decision. The most current version of N.D.C.C. § 11-16-01 is quoted here.

[3] Because the official duties of a state's attorney and an assistant state's attorney are the same, references to the term "state's attorney" in this opinion include both the state's attorney and assistant state's attorney, and any discussion in this opinion using the term "state's attorney" applies equally to state's attorneys and assistant state's attorneys.

[¶23] The official duty of a state's attorney implicated in this case is the duty to "[a]ttend the district court and conduct on behalf of the state all prosecutions for public offenses," under N.D.C.C. § 11-16-01(1). Although N.D.C.C. § 11-16-01(1) provides a general statement that state's attorneys are to conduct criminal prosecutions on behalf of the state, the statute is not sufficiently specific to determine what conduct is within the scope of a state's attorney's official duty to conduct criminal prosecutions so as to afford certain communications absolutely privileged. To refine which acts are within the scope of a state's attorney's official duty to conduct criminal prosecutions, we look to the law of prosecutorial immunity. Although the protections afforded to certain communications arising in the context of defamation have always been referred to as "privileges," the protections provide immunity to certain individuals for certain communications. *See* Restatement (Second) of Torts ch. 25, topic 2, intro. note. This Court itself has previously referred to the privileges provided in N.D.C.C. § 14-02-05 as immunities. *See Riemers v. Grand Forks Herald*, 2004 ND 192, ¶ 6, 688 N.W.2d 167; *Richmond*, 552 N.W.2d at 588. Other authorities, including jurisdictions with privilege statutes similar to North Dakota's, have done so as well. *See Kilgore v. Younger*, 640 P.2d 793, 800 (Cal. 1982); *State ex rel. Oklahoma Bar Ass'n v. Dobbs*, 94 P.3d 31, 45 (Okla. 2004); *Harris v. Riggenbach*, 633 N.W.2d 193, 196 (S.D. 2001); 50 Am. Jur. 2d *Libel and Slander* § 269. Given the parallels of the two doctrines, we see no distinguishable difference between those actions that entitle a prosecutor to absolute immunity from those actions that constitute the proper discharge of a prosecutor's official duties shielding certain communications with absolute privilege.

[¶24] At the outset, we acknowledge the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Prosecuting attorneys are considered "quasi-judicial officers" entitled to absolute immunity granted judges when their activities are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Witzke v. City of Bismarck*, 2006 ND 160, ¶ 16, 718 N.W.2d 586; *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 45, 576 N.W.2d 505; *see* 27 C.J.S. *District and Prosecuting Attorneys* §§ 56, 59, 61; 8A American Law of Torts § 29:91; 4 Local

11

Government Law § 27:11; 2 Modern Tort Law: Liability and Litigation § 17:13 (2d ed.); *cf.* Restatement (Second) of Torts § 586 (discussing absolutely privileged communications made by a prosecuting attorney preliminary to a proposed judicial proceeding); 50 Am. Jur. 2d *Libel and Slander* §§ 280, 282, 290 (discussing privileged communications by a prosecutor). Such prosecutorial functions entitled to absolute immunity include, for example, the initiation and pursuit of a criminal prosecution and the presentation of the State's case at trial. *Witzke*, at ¶ 17. However, when functioning in the role of an administrator or investigative officer rather than in the role of an advocate, prosecutors have only the protection of qualified immunity. *Id.*

[¶25] Guided by the standard applied in cases concerning prosecutorial immunity, a state's attorney's official duties are those activities that are "intimately associated with the judicial phase of the criminal process." Accordingly, a state's attorney's communications are absolutely privileged under N.D.C.C. § 14-02-05(1) when made in the course of such activities. In at least three cases, courts have concluded a prosecutor was not entitled to absolute immunity for issuing a *Giglio* letter outside of a criminal proceeding.

[¶26] In *Beck v. Phillips*, 685 N.W.2d 637 (Iowa 2004), a case with facts nearly identical to the present case, the Iowa Supreme Court decided a county attorney was not entitled to absolute immunity for sending a *Giglio* letter concerning a local police officer to the police chief. The prosecutor concluded, after reviewing the Iowa Department of Criminal Investigation's (DCI) investigative files, the police officer had lied to the DCI during the investigation of the officer's wife's death. *Id.* at 641. The prosecutor wrote a letter to the police chief informing him the prosecutor's office would not prosecute any case in which the officer was involved due to *Brady-Giglio* concerns. *Id.* Because of the letter, the officer's employment was terminated. *Id.* The officer sued the prosecutor for defamation and other state law claims. *Id.*

[¶27] Applying the "intimately associated with the judicial phase of the criminal process" standard set forth in *Imbler*, the Iowa Supreme Court concluded the prosecutor's decision not to prosecute cases involving the officer

was entitled to absolute immunity, but the prosecutor's writing of the letter to the police chief was not entitled to absolute immunity. *Id.* at 644-45. The court stated, "it strains reason too far to characterize [the prosecutor's] writing of [the] letter[ ] as an activity 'intimately associated with the judicial phase of the criminal process'" because, in writing the letter, the prosecutor "was not deciding [whether] to prosecute a case, but instead merely advising local law enforcement authorities on . . . how his office would deal with [future criminal prosecutions]." *Id.* at 645. The court further stated that even though a prosecutor's duty to make *Giglio* determinations are "an integral part of a prosecutor's job" and "serve[ ] a vital public function," the prosecutor's letter to the police chief was an administrative function entitled to only qualified immunity because the letter did not "involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Id.*

[¶28] Most recently, the United States District Court for the Middle District of Tennessee issued a memorandum opinion determining a prosecutor was not entitled to absolute immunity for publishing an email to the city manager "*Giglio* impairing"[4] a local police officer. *Stockdale v. Helper*, No. 3:17-cv-00241, 2020 U.S. Dist. LEXIS 31051, 2020 WL 887593 (M.D. Tenn. Feb. 24, 2020), *appeal docketed*, No. 20-5269 (6th Cir. Mar. 11, 2020). The court determined the prosecutor was entitled to absolute immunity for her decision to "*Giglio* impair" the officer, but she was not entitled to absolute immunity for sending the *Giglio* email to the city manager. *Id.*, 2020 WL 887593, at *10. Reasoning that the prosecutor's *Giglio* email to the city manager related to staffing and was not an activity intimately associated with her role as an advocate, the court concluded the prosecutor's communication of the *Giglio* impairment was administrative rather than prosecutorial in nature. *Id.*

[¶29] The *Stockdale* court cited *Beck* and *Singer v. Steidley*, No. 13-CV-72-GKF-TLW, 2013 U.S. Dist. LEXIS 204839 (N.D. Okla. Apr. 30, 2013), in

13

support of its decision. In *Singer*, a district attorney presented *Giglio* material concerning a local police officer to the supervising police chief. 2013 U.S. Dist. LEXIS 204839, at \*7. The district attorney also signaled her intention to disclose the material to criminal defense counsel in cases in which the officer was involved. *Id.* The officer was notified that his employment would be terminated if the material in question was in fact *Giglio* material. *Id.* at \*9. The officer filed suit against the prosecutor, and the prosecutor filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* at \*2-3. In deciding the prosecutor's motion, the court determined the prosecutor was entitled to absolute immunity for disclosing the *Giglio* material to defense counsel in criminal cases, but disclosure of the *Giglio* material to the supervising police chief was "conceivably administrative and/or investigative rather than prosecutorial in nature." *Id.* at \*20. Accordingly, the court denied the prosecutor's motion to dismiss on grounds of absolute prosecutorial immunity. *Id.* at \*20-21, \*29.

[¶30] The cases discussed above raise two issues. The first issue is whether Lawyer's compilation of the *Giglio* letter and her decision to no longer use Krile as a witness in criminal prosecutions was entitled to absolute immunity. Courts have consistently held a prosecutor's decision not to prosecute cases involving certain police officers or use a certain officer's testimony due to *Brady*/*Giglio* concerns is an activity "intimately associated with the judicial phase of the criminal process" entitled to absolute immunity. *See, e.g.*, *Savage v. Maryland*, 896 F.3d 260, 271-72 (4th Cir. 2018); *Roe v. City & Cty. of San Francisco*, 109 F.3d 578, 583-84 (9th Cir. 1997); *Barnett v. Marquis*, 16 F. Supp. 3d 1218, 1222-23 (D. Or. 2014). Thus, Lawyer's decision to *Giglio* impair Krile and no longer use Krile as a witness in criminal proceedings was an activity "intimately associated with the judicial phase of the criminal process" entitled to absolute privilege or immunity.

[¶31] The second issue is whether Lawyer's publication of the *Giglio* letter to Chief Donlin was a communication made within the proper discharge of Lawyer's official duties as an assistant state's attorney entitled to absolute privilege. After considering the foregoing authority, we conclude Lawyer's publication of the *Giglio* letter to Police Chief Donlin was not made within the

14

proper discharge of Lawyer's official duties as an assistant state's attorney. We recognize prosecutors are required to disclose certain information to the defense in a criminal proceeding under *Brady* and *Giglio*, and that the diminished credibility of a police officer hindered by *Brady* and *Giglio* may raise challenges for the prosecution. However, not every activity of a prosecutor is within a prosecutor's official duties simply because it is performed by a prosecutor. *See Buckley*, 509 U.S. at 273; *Imbler*, 424 U.S. at 431 n.33. In this instance, Lawyer was acting in an administrative capacity by informing Chief Donlin of her opinion that Krile was *Giglio* impaired and of how her office would proceed with cases in which Krile was involved. Lawyer's publication of the *Giglio* letter to Chief Donlin was not an absolutely privileged communication under N.D.C.C. § 14-02-05(1).

2

[¶32] The district court determined "Lawyer also ha[d] absolute immunity in regard to the POST Board and the Department of Labor as she was acting in her capacity as a prosecutor." We disagree with the district court that Lawyer's publication of the *Giglio* letter and her affidavits to the POST Board and Department of Labor were absolutely privileged communications made within the proper scope of her official duties as an assistant state's attorney. Lawyer's communications in these instances were, however, absolutely privileged communications made in a "proceeding authorized by law."

[¶33] Under N.D.C.C. § 14-02-05(2) certain communications are absolutely privileged when made "[i]n any legislative or judicial proceeding or in any other proceeding authorized by law." A "proceeding" under subsection (2) includes "some form of governmental process." *Emo*, 183 N.W.2d at 514. We have held federal administrative proceedings, *see Fish v. Dockter*, 2003 ND 185, ¶ 14, 671 N.W.2d 819, Parole Board meetings, *see Pulkrabek v. Sletten*, 557 N.W.2d 225, 228 (N.D. 1996), and school board meetings, *see Rykowsky*, 508 N.W.2d at 351, are all proceedings authorized by law under N.D.C.C. § 14-02-05(2). *See also, Humann v. KEM Elec. Coop., Inc.*, 450 F. Supp. 2d 1006, 1017 (D.N.D. 2006) (holding unemployment compensation hearing conducted by Job Service North Dakota was "proceeding authorized by law"); *Stafney*, 71 N.D. 170, 299 N.W.

15

at 589 (stating communication required by the Workmen's Compensation Bureau and the Social Security Act pursuant to statute was made in a "proceeding authorized by law").

[¶34] Under N.D.C.C. §§ 14-02.4-22, 23, the Department of Labor and Human Rights has the authority to investigate claims of discrimination. This authority includes requesting documents and holding a hearing. *Id.* The investigation conducted by the Department of Labor into Krile's discrimination claims was a formal government process authorized by statute. During its investigation, the Department of Labor requested certain materials regarding Krile's employment termination. The submission of Lawyer's affidavits and the *Giglio* letter were in response to the Department of Labor's request. The disclosure of the *Giglio* letter and Lawyer's affidavits during the course of the Department of Labor's investigation were absolutely privileged communications made during a "proceeding authorized by law" under N.D.C.C. § 14-02-05(2).

[¶35] Lawyer's disclosure of the *Giglio* letter to the POST Board may have also been an absolutely privileged communication under N.D.C.C. § 14-02-05(2). Section 12-63-01.1, N.D.C.C., establishes the POST Board. Under N.D.C.C. § 12-63-04(2)(a), the Board may "[i]ssue subpoenas, examine witnesses, administer oaths, and investigate allegations of practices violating the provisions of this chapter or rules adopted by the board." Consistent with our past precedent, POST Board investigations are "proceeding[s] authorized by law" conducted by a statutorily created entity. We are unable to determine whether Lawyer's alleged disclosure of the *Giglio* letter to the POST Board was an absolutely privileged communication because the evidence in the record is insufficient to determine whether Lawyer disclosed the *Giglio* letter to the POST Board or whether the *Giglio* letter was disclosed as part of a Board investigation. But as a matter of law, if Lawyer did in fact disclose the *Giglio* letter to the POST Board as part of a Board investigation, Lawyer's disclosure was an absolutely privileged communication under N.D.C.C. § 14-02-05(2).

B

[¶36] Communications under N.D.C.C. § 14-02-05(3) and (4) are not absolutely privileged. *See Soentgen*, 467 N.W.2d at 78. Rather, the privilege afforded

16

under subsections (3) and (4) "is a qualified privilege to prevent abuse." *Riemers*, 2004 ND 192, ¶ 6, 688 N.W.2d 167 (citing *Richmond*, 552 N.W.2d at 588; *Soentgen*, at 78). "The analysis of a qualified privilege requires a two-step process to determine: (1) if a communication's attending circumstances necessitate a qualified privilege; and (2) if so, whether the privilege was abused." *Khokha v. Shahin*, 2009 ND 110, ¶ 26, 767 N.W.2d 159 (citing *Soentgen*, at 78). "If the circumstances for a communication are not in dispute, the determination of whether there is a qualified privilege is a question of law for the court." *Id.*

[¶37] "A qualified privilege is abused if statements are made with actual malice, without reasonable grounds for believing them to be true, on a subject matter irrelevant to the common interest or duty." *Fish*, 2003 ND 185, ¶ 13, 671 N.W.2d 819 (citing *Richmond*, 552 N.W.2d at 589). "Actual malice is required in order to defeat a qualified privilege." *Soentgen*, 467 N.W.2d at 79 (citing *WDAY*, 89 N.W.2d 102; *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98 (Iowa 1985); *Frankson v. Design Space Int'l*, 394 N.W.2d 140 (Minn. 1986); 50 Am. Jur. 2d *Libel and Slander* § 199; Prosser & Keeton on Torts § 115; Restatement (Second) Torts § 600). "Actual malice depends on scienter and requires proof that a statement was made with malice in fact, ill-will, or wrongful motive." *Id.* (citing *Sibley v. Lutheran Hosp. of Md., Inc.*, 709 F. Supp. 657 (D. Md. 1989); *De Leon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229 (4th Cir. 1989); *Haldeman*, 376 N.W.2d 98; *Frankson*, 394 N.W.2d 140). Actual malice is not inferred from the communication itself; the plaintiff must prove actual malice and abuse of the privilege. *Id.* "Generally, actual malice and abuse of a qualified privilege are questions of fact." *Fish*, at ¶ 13 (citing *Soentgen*, at 79). "However, where the facts and inferences are such that reasonable minds could not differ, factual issues are questions of law." *Id.*

[¶38] Although Lawyer's publication of the *Giglio* letter to Chief Donlin was not absolutely privileged, Lawyer's publication of the letter to Chief Donlin may be entitled to a qualified privilege under N.D.C.C. § 14-02-05(3). Lawyer's disclosure of the *Giglio* letter to the POST Board may also be entitled to a qualified privilege under N.D.C.C. § 14-02-05(3). But determining whether

17

these communications are entitled to a qualified privilege is not appropriate in this appeal when the issue was not addressed in the proceedings below.

## C

[¶39] The district court did not address whether Lawyer's disclosure of the *Giglio* letter to Lincoln Police Chief Gibbs was a privileged communication under N.D.C.C. § 14-02-05. Krile claimed defamation for Lawyer's disclosure of the *Giglio* letter to Lincoln Police Chief Gibbs in her complaint and has preserved the claim by raising it in her response to Lawyer's motion to dismiss and on appeal. Krile's claim must be addressed on remand.

## D

[¶40] To summarize our determination of whether Lawyer's communications were privileged, Lawyer's publication of the *Giglio* letter to Chief Donlin was not an absolutely privileged communication under N.D.C.C. § 14-02-05(1). Although there may be little evidence to support Krile's claims, we construe the complaint in the light most favorable to Krile. We reverse the district court's dismissal of Krile's defamation claims against Lawyer for Lawyer's disclosure of the *Giglio* letter to Chief Donlin. We affirm the district court's dismissal of Krile's defamation claims for Lawyer's disclosure of the *Giglio* letter and her affidavits to the Department of Labor and Human Rights because the communications were absolutely privileged under N.D.C.C. § 14-02-05(2). We reverse the district court's dismissal of Krile's defamation claims against Lawyer for Lawyer's alleged publication of the *Giglio* letter to the POST Board because we are unable to determine from the existing record whether Lawyer's alleged disclosure of the *Giglio* letter to the POST Board was a privileged communication. If Lawyer did in fact disclose the *Giglio* letter to the POST Board as part of a Board investigation, Lawyer's disclosure was an absolutely privileged communication under N.D.C.C. § 14-02-05(2), and Krile's defamation claims for publication of the *Giglio* letter to the POST Board should be dismissed. On remand, the district court may decide whether Lawyer's communications to Chief Donlin and the POST Board are entitled to a qualified privilege. Krile's defamation claims for Lawyer's disclosure of the *Giglio* letter

18

to Lincoln Police Chief Gibbs were not previously addressed by the district court, and must also be addressed on remand.

## IV

[¶41] The district court order is affirmed in part, reversed in part, and remanded.

[¶42] Gerald W. VandeWalle
　　Lisa Fair McEvers
　　Jerod E. Tufte
　　Steven L. Marquart D.J.
　　Daniel J. Crothers Acting C.J.

[¶43] The Honorable Steven L. Marquart, D.J., sitting in place of Jensen, C.J., disqualified.